Case 1:00-cv-00161   Document 9   Filed in TXSD on 11/06/2000   Page 1 of 52

*9*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

NOV 0 6 2000

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| RICARDO PEREZ, JR. | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. |
| | § | |
| CITY OF LOS FRESNOS, TEXAS, | § | B - 00 - 161 |
| JUAN C. SIERRA, SR., GONZALO | S | |
| ACEVEDO, IDA GARCIA, MIGUEL | § | |
| MENDOZA, Individually and in their | § | |
| Official Capacities and | § | |
| JUAN MENDOZA, JR. | § | |
| Defendants | § | JURY REQUESTED |

=======================================================

# DEFENDANTS' MOTION TO DISMISS,
# MOTION FOR MORE DEFINITE STATEMENT
# and MOTION TO STAY DISCOVERY

=======================================================

TO THE HONORABLE UNITED STATES DISTRICT COURT;

COME NOW **CITY OF LOS FRESNOS, TEXAS, JUAN C. SIERRA, SR.,**

**GONZALO ACEVEDO, IDA GARCIA** and **MIGUEL MENDOZA,** *Individually and in their*

*Official Capacities,* Defendants herein, and file this their Motion to Dismiss for failure to state

a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6),

Motion for More Definite Statement, pursuant to Federal Rule of Civil Procedure 12(e), and

Motion to Stay Discovery, pursuant to applicable law, and for cause would respectfully show

unto the Court the following:

V:\FP\MOTIONS\202-00.M2D                                                      PAGE 1

CutePDF - www.cutepdf.com

# MOTION TO DISMISS

## I.

## SUMMARY OF MOTION

Plaintiff was an at-will employee of Defendant City of Los Fresnos, Texas. He alleges that he was terminated in violation of his right to free speech, that he had a protected due process property interest in his continued employment, but that he was not given a due process hearing before or after his termination, that Defendants violated the Texas Whistleblower's Act in terminating him, and that Defendants slandered him, intentionally inflicted emotional distress on him, and engaged in a civil conspiracy to violate his rights. All but Plaintiff's free speech claim, and Whistleblower's Act claim against the City of Los Fresnos, should be dismissed at this time.

As an at-will employee, Plaintiff Perez did not have a protected property right in his continued employment, and any due process to which he was allegedly entitled was provided. In addition, the Whistleblower Act applies only to employing governmental entities, and not to individuals. Plaintiff has also not identified any allegedly slanderous statements made by these individual Defendants; to the contrary, Plaintiff complains that these individual Defendants did not identify the complaints or concerns they had with him. The allegations raised by Defendant also do not rise to the level of extreme and outrageous conduct, and Plaintiff has not identified how he suffered severe emotional distress, in order to establish an intentional infliction of emotional distress claim. Plaintiff's defamation and intentional infliction claims are also barred

by sovereign immunity as against the City of Los Fresnos, Texas.   Because Plaintiff has identified no basis for a civil conspiracy claim, that claim should also be dismissed.   Plaintiff may not recover exemplary damages against Defendant City of Los Fresnos, Texas, and he has failed to identify any basis for recovery of exemplary damages against the individual Defendants herein, or any basis for the recovery of expert fees herein.   The individual Defendants herein are also entitled to dismissal based on their entitlement to qualified immunity for all acts alleged.

## II.

## FACTUAL ALLEGATIONS

Plaintiff Ricardo Perez, Jr. is the former Chief of Police for the City of Los Fresnos, Texas.   Plaintiff had no contract of employment.   Rather, he was subject to the City's personnel policies.   Plaintiff claims he referred complaints and allegations of abuse and civil rights violations by an officer to the FBI, although he does not identify the facts surrounding the complaint, the allegations, or the date when such complaint was allegedly made.   He alleges that sometime after he filed this complaint, Defendant Garcia began inquiring about his work history and performance, that Defendant Sierra allegedly stated he did not have a problem with Plaintiff, but that he had some issues with which he was concerned, and that Defendant Acevedo stated that Plaintiff was doing a good job and that he wanted to know what was wrong.   Plaintiff alleges a City Commission meeting was scheduled for August 29, 2000, to deliberate Plaintiff's employment, at which time he requested that he be provided the reasons for any discipline or termination, but that no response was given.   Rather, that meeting was reconvened to a special meeting on September 26, 2000.   Plaintiff alleges that because of the media attention attracted to his employment, the individual Defendant council members were humiliated and angered.

Plaintiff again requested that he be provided notice of the complaints against him regarding his potential termination, but that no reasons were ever given. On September 26, 2000, the Los Fresnos Board of Aldermen voted to terminate Plaintiff's employment, without providing Plaintiff with an explanation for its actions. Plaintiff alleges a meeting of the minds between the individual Defendant Alderpersons to terminate him. Plaintiff alleges to have invoked the City's procedures requiring explanation or reasons for his termination, although he failed to identify any such alleged procedures or how he timely requested their implementation.

## III.

## LEGAL ARGUMENT

### A.    Due Process

Plaintiff does not specify whether he is claiming a pre- or post-termination due process violation, or the Constitutional basis for his claim; instead, he alleges only generally that his "due process" rights were violated. In order to have a right to due process in an employment setting, the employee must first establish that he has a property interest in his employment, which must include a legitimate right to continued employment. See *McDonald v. City of Corinth*, 102 F.3d 152, 155 (5th Cir. 1996). State law determines whether a Plaintiff has a property interest in employment. *Id.* Because Texas is an at-will employment state, an employee must demonstrate the existence of some form of an employment contract in order to establish a property right to his continued employment. *Shultea v. Wood*, 47 F.3d 1427, 29 (5th Cir. 1995).

V:\FP\MOTIONS\202-00.M2D

As set out in the City of Los Fresnos Personnel Policies Manual, Plaintiff was a probationary employee at the time of his termination. *See* Exhibit A, §3-01. In addition, the Personnel Policies Manual specifically provide

> [n]othing in this manual shall be considered to create a property right in employment. <u>It should be understood that employment is for an indefinite period and is at-will for both employer and employee. These policies are not intended to constitute an employment contract or entitlement to continued employment with the City.</u>

*Id.*, §1-03 (emphasis in original). A probationary employee "has no reasonable expectation of continued employment while in the probationary status," and therefore he has "no property interest in his or her continued employment sufficient to call forth procedural due process when that employment is terminated." *Evans v. City of Dallas*, 861 F.2d 846, 848 (5th Cir. 1988); *Burnley v. Thompson*, 524 F.2d 1233, 1240 (5th Cir. 1975).

"To succeed with a claim based on substantive due process in the public employment context, the Plaintiff must show two (2) things: (1) that he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious." *Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993). "[P]rocedural due process is a positivist notion, designed to protect property interests, existing not by force of the due process clause itself, but established by reference to some independent source, such as state law or contract." *Martin v. Memorial Hosp. at Gulfport*, 130 F.3d 1143, 1147 (5th Cir. 1997), citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694,

2699, 33 L.Ed.2d 570 (1972). Because Plaintiff has not alleged any basis for a property interest in his continued employment, he cannot establish any claim for violation of his procedural or substantive due process rights.

Plaintiff has not alleged the existence of any employment contract, and no such contract exists. Pursuant to the City's Personnel Policies, Plaintiff was an at-will employee, with no property right to his continued employment. Without any such property right, Plaintiff was not entitled to any due process hearing prior to or after the termination of his employment. Accordingly, Plaintiff's due process claim against the City of Los Fresnos should be dismissed in its entirety.

Because Plaintiff Perez did not have any right to due process from the City of Los Fresnos, he also had no such right from the individual Defendants, where he had no property right of which they could deprive him. *See Moulton v. City of Beaumont*, 991 F.2d 227 (5th Cir. 1993). In addition, because Plaintiff did not have an employment relationship with the individual Defendants, they could not have deprived him of any right to due process from themselves individually. A right to due process in an employment setting applies only between an employee and his employer. Plaintiff has not identified any actions taken by the individual Defendants, other than in their official capacities, however. The individual Defendants could not have deprived Plaintiff of any due process because they did not owe him any process from themselves individually; at most they would have owed him some form of process as Alderpersons, in their official capacities. Because Plaintiff did not have a property right to continued employment, however, he may not now maintain a claim for deprivation of due process from either Defendant City of Los Fresnos or the individual Defendants herein.

Plaintiff also appears to allege that Co-Defendant Juan Mendoza, Jr., "in collusion and conspiracy with the other Defendant Alderpersons, denied the Plaintiff due process for his protected liberty interest." The only legal basis for asserting a claim of deprivation of a liberty interest would necessarily have to arise in the denial of an opportunity to rebut allegedly false charges against him. To the extent that Plaintiff is alleging such a claim against these Defendants, however, he must first establish that the:

> charges against him were raised to such a level that they created a 'badge of infamy' which destroys the claimant's ability to take advantage of other employment opportunities. Additionally, the claims must be false and the claimant must show that damage to his reputation and employment opportunities has in fact occurred.

*Farias v. Bexar County Bd. of Trustees for Mental Health Mental Retardation Services*, 925 F.2d 866, 877-78 (5th Cir. 1991), *quoting Evans v. City of Dallas*, 861 F.2d at 851. Plaintiff has not identified how any of the Defendants asserted any charges against him, how the charges against him created a "badge of infamy," how the charges against him were false, how his reputation was damaged, or how any employment opportunities have been denied.

"Moreover, the process due such an individual is merely a hearing providing a public forum or opportunity to clear one's name, not actual review of the decision to discharge the employee." *Rosenstein v. City of Dallas, Tex.*, 876 F.2d 392, 395 (5th Cir. 1989), modified on other grounds, *Rosenstein v. City of Dallas, Tex.*, 901 F.2d 61 (5th Cir. 1990)(en banc), *citing Board of Regents of State Colleges v. Roth*, 408 U.S. at 573 n.12, 92 S.Ct. at 2707 n.12. Plaintiff alleges in his Complaint that he was provided a hearing in a public forum at the August 29th and September 26th meetings, at which he could clear his name of any allegedly false

accusations. Accordingly, he has not stated a claim for the denial of any liberty interest, or any right to due process, and such claim should therefore be dismissed.

**B.   Texas Whistleblower's Act**

The Texas Whistleblower's Act authorizes suits by a public employee against his employing state or local governmental entity for violation of the Act. TEX.GOV'T CODE §554.0035. The Texas Whistleblower's Act does not provide any private right of action against a supervisor or co-worker, however. *Thompson v. City of Arlington*, 838 F.Supp. 1137 (N.D. Tex. 1993). *See also, Villarreal v. Williams*, 1998 WL 341292, p.2. (Tex.App.- San Antonio, March 31, 1998, n.w.h.). Because the Whistleblower's Act does not allow for claims against individuals, Defendants Juan C. Sierra, Sr., Gonzalo Acevedo, Ida Garcia and Miguel Mendoza are entitled to dismissal of this claim.

**C.   Defamation and Slander**

"Slander is a defamatory statement that is orally communicated or published to a third person without legal excuse." *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995). On the other hand, "an employer has a conditional or qualified privilege that attaches to communications made in the course of an investigation following a report of employee wrongdoing." *Id.* "[T]ruth is an affirmative defense to slander." *Id.*; *Town of South Padre Island v. Jacobs*, 736 S.W.2d 134, 140 (Tex.App.- Corpus Christi 1986, writ denied). Texas does not recognize the tort of false light invasion of privacy, however. *Cain v. Hearst Corp.*, 878 S.W.2d 577 (Tex. 1994).

Plaintiff sues Defendants for the alleged publication of false and non-privileged statements to third persons, yet he fails to identify any such alleged statements. To the contrary, Plaintiff complains that the City and the Board of Aldermen did not provide him with the reasons for his potential discipline or termination. By Plaintiff's own allegations, he complains that the Aldermen *did not* provide him with the concerns they had about his performance, specifically avoiding any comments that he might construe as accusing him of a crime or of any immoral or dishonest conduct. Because Plaintiff has identified no comments whatsoever made by any of these Defendants, including to whom and when they were made, Plaintiff cannot establish a cause of action for defamation or slander against any of these Defendants.

In addition, the Texas Tort Claims Act does not authorize any claims of intentional torts against the City of Los Fresnos. TEX.CIV.PRAC. & REM. CODE §101.057(2). Because the Tort Claims Act does not waive the City's immunity for claims of intentional torts such as slander, the City retains its sovereign immunity from this claim. *Delaney v. University of Houston*, 835 S.W.2d 56, 59 (Tex. 1992); *City of Hempstead v. Kmiec*, 902 S.W.2d 118, 122 (Tex.App.-Houston [1st Dist.] 1995, no writ). Accordingly, Plaintiff's claim of defamation against these Defendants should be dismissed.

## D.   <u>Intentional Infliction of Emotional Distress</u>

In order for Plaintiff to establish his claim of intentional infliction of emotional distress, he must prove "(1) the defendant acted intentionally or recklessly, (2) the conduct was extreme and outrageous, (3) the actions of the defendant caused the plaintiff emotional distress, and (4) the emotional distress suffered by the plaintiff was severe." *Twyman v. Twyman*, 855 S.W.2d

619, 621 (Tex. 1993). In addition, "liability for outrageous conduct should be found 'only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.*, *quoting* RESTATEMENT (SECOND) OF TORTS §46, comment d(1965).

Plaintiff has not identified any action for conduct allegedly engaged in by any of these Defendants that would constitute extreme or outrageous conduct, nor has he alleged any emotional or distress suffered by him that rose to the level of severity necessary to establish this cause of action. Without even an allegation that his claim rose to the level necessary to establish an intentional infliction claim, that claim must be dismissed.

In addition, to the extent Plaintiff is alleging a cause of action for intentional infliction of emotional distress as against the City of Los Fresnos, that claim cannot survive. TEX.CIV.PRAC. & REM. CODE §101.057(2); *Delaney v. University of Houston*, 835 S.W.2d at 59; *City of Hempstead v. Kmiec*, 902 S.W.2d at 122. Accordingly, Plaintiff's claim of intentional infliction of emotional distress should be dismissed in its entirety.

## E.    Civil Conspiracy

Plaintiff alleges only generally that the Defendants violated state law and Plaintiff's alleged property rights, thereby somehow establishing his claim for civil conspiracy. Plaintiff does not identify, however, any alleged state law violation, particularly in light of the fact that he did not have any property right to his continued employment, as further set out above. Even to the extent that he could establish some alleged property right, he does not allege or establish how any of the Defendants violated state law in depriving him of any alleged property rights.

"An actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex. 1983).  It requires Plaintiff to provide evidence of "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Id.*  Plaintiff has neither alleged nor provided any evidence to establish any meeting of the minds or any unlawful, overt acts.   Accordingly, Plaintiff's claim of civil conspiracy should be dismissed.

F.   **Exemplary Damages**

Plaintiff has requested exemplary damages against the Defendants herein.   Even though the Supreme Court has ruled that exemplary damages are recoverable in a § 1983 action, a plaintiff may only recover if he establishes that the official conduct in question is motivated by evil intent or demonstrates reckless or callous indifference to constitutional rights, *Brown v. Bryan County*, 67 F.3d 1174, 1181 (5th Cir. 1995); *Thompkins v. Belt*, 828 F.2d 298, 301 (5th Cir. 1987).  Plaintiff's Original Complaint does not contain statements meeting these standards, and Defendants' conduct described in Plaintiff's Original Complaint does not rise to the level of egregious conduct for which Defendants' could be subject to a punitive damages award.   In addition, exemplary damages may not be awarded against Defendant City of Los Fresnos because its sovereign immunity precludes these claims. *Newport v. Fact Concerts, Inc.*, 453 US 247, 259, 101 S.Ct. 2748, 2756, 69 L.Ed.2d 616, 627 (1981); TEX.CIV.PRAC. & REM. CODE §101.024; *City of La Porte v. Barfield*, 898 S.W.2d 288, 299 (Tex. 1995).  Therefore, Plaintiff's claim for exemplary damages should be dismissed.

## G.    Expert Fees

Plaintiff seeks the recovery of fees for any experts he may retain in this action, pursuant to 42 U.S.C. §1988.  Under certain circumstances, §1988 allows for the recovery of expert fees for an action brought pursuant to 42 U.S.C. §1981 or §1981a.  Plaintiff does not seek recovery under either of those sections, however.  Accordingly, his claim for recovery of expert fees should be dismissed.

## H.    Official Immunity

There is a presumption that individual Defendants are entitled to federal qualified immunity.  To establish that individual Defendants Juan C. Sierra, Gonzalo Acevedo, Ida Garcia and Miguel Mendoza are *not* entitled to qualified immunity, the Plaintiff must satisfy a three-pronged test.  First, he must allege facts that assert a violation of a constitutional right.  Second, he must show that this right was clearly established at the time of the Defendants actions, and third, he must show that the Defendants' actions were objectively unreasonable.  *Eugene v. Alief Independent School Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995).  Even if Defendants' conduct infringed upon a constitutional right of the Plaintiff, official immunity will shield the Defendants if their conduct was objectively reasonable.  *Gutierrez v. City of San Antonio*, 139 F.3d 441, 445 (5th Cir. 1998).  Plaintiff has not alleged the violation of a clearly established right of which the Defendants would reasonably have known.  However, if this Court finds that Plaintiff's termination did involve the violation of a constitutional right, then Defendants contend that the termination of Plaintiff was objectively reasonable in light of all the circumstances surrounding Plaintiff's termination, including the at-will employment relationship between the Plaintiff and the City.

WHEREFORE, PREMISES CONSIDERED, Defendants **CITY OF LOS FRESNOS, TEXAS, JUAN C. SIERRA, SR., GONZALO ACEVEDO, IDA GARCIA** and **MIGUEL MENDOZA,** *Individually and in their Official Capacities,* would respectfully request that the Court set this matter for hearing and dismiss each of these claims on which Plaintiff has failed to state a cause of action on which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), and for such other and further relief to which Defendants may show themselves to be justly entitled, at law and in equity.

## MOTION FOR MORE DEFINITE STATEMENT

### IV.

Without waiving the foregoing Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and in the alternative thereto, if this Court should find that Plaintiff has stated a claim upon which relief may be granted, in whole or in part, then Defendants would request that this Court order Plaintiff to amend his Original Complaint, pursuant to Federal Rule of Civil Procedure 12(e), to more specifically define the following matters:

1. To identify any speech he allegedly made, for which his rights were allegedly violated, including the date of such speech, the person to whom it was communicated, the content of such speech, and how he alleges Defendants knew about or were made aware of such speech.

2. To identify the legal and factual basis on which he believes he had a property right to continued employment.

3.     To identify the process to which he believes he was entitled, including identifying any and all hearings to which he believes he was entitled and how he requested such hearings.

4.     To identify the rights guaranteed under the Constitution which he believes were violated.

5.     To identify how one or more Defendants allegedly violated his alleged liberty interest, including identifying which actions he alleges were engaged in by each Defendant, and what actions he took to protect his rights.

6.     To identify how he may maintain a cause of action under the Texas Whistleblower's Act against the individual Defendants herein.

7.     To identify how he may maintain a cause of action against the City of Los Fresnos for defamation and intentional infliction of emotional distress, notwithstanding the restrictions of Texas Civil Practice & Remedies Code §101.057.

8.     To identify any allegedly defamatory statement made by each individual Defendant, including the date such statements were made, to whom they were made and the text of such statements.

9.     To identify how he may maintain a cause of action for intentional infliction of emotional distress, including identifying any allegedly extreme and outrageous conduct engaged in by each individual Defendant, and how the emotional distress he allegedly suffered was severe.

10.     To identify which individual Defendants he alleges engaged in a civil conspiracy, including how these Defendants had a meeting of the minds, and identifying the unlawful, overt acts allegedly committed by those Defendants.

11.     To identify how Plaintiff may recover exemplary damages from Defendant City of Los Fresnos, notwithstanding the restrictions of Texas Civil Practice & Remedies Code §101.024 and applicable case law.

12.     To identify any facts that would establish a basis for the recovery of exemplary damages from each individual Defendant herein.

13.     To identify how he would be entitled to a recovery of expert fees herein, notwithstanding the restrictions of 42 U.S.C. §1988(c).

14. To identify how the individual Defendants herein would not be entitled to the defense of qualified or official immunity, including how each of these Defendants allegedly violated a clearly established constitutional right of which a reasonable person would have known.

WHEREFORE, PREMISES CONSIDERED, Defendants **CITY OF LOS FRESNOS, TEXAS, JUAN C. SIERRA, SR., GONZALO ACEVEDO, IDA GARCIA** and **MIGUEL MENDOZA**, *Individually and in their Official Capacities*, request that the Court require Plaintiff to amend his Original Complaint consistent with Defendants' Motion for More Definite Statement, and that Defendants be granted such other and further relief to which they may show themselves to be justly entitled, at law and in equity.

# MOTION TO STAY DISCOVERY

## V.

Because Plaintiff has stated no cognizable basis for liability as against individual Defendants **JUAN C. SIERRA, SR., GONZALO ACEVEDO, IDA GARCIA** and **MIGUEL MENDOZA**, *Individually and in their Official Capacities*, said Defendants would request that all discovery be stayed in this action pending resolution of their claim of entitlement to qualified immunity. Defendants assert that they are entitled to dismissal of all claims against them because Plaintiff has failed to allege a violation of clearly established law of which a reasonable person would have known that was allegedly committed by any of them. The Supreme Court has held that individual Defendants such as **JUAN C. SIERRA, SR., GONZALO ACEVEDO, IDA GARCIA** and **MIGUEL MENDOZA**, *Individually and in their Official Capacities*, are

entitled to dismissal before commencement of any discovery, particularly because such immunity is effectively lost if the claim to which it applies is erroneously permitted to go to trial. *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985). Defendants **JUAN C. SIERRA, SR., GONZALO ACEVEDO, IDA GARCIA** and **MIGUEL MENDOZA**, *Individually and in their Official Capacities*, are entitled to an order staying all discovery, because to allow discovery to go forward on issues other than those related to their claim of immunity would effectively deny them the benefit of qualified immunity. *Wicks v. Mississippi State Empl. Services*, 41 F.3d 991, 994-95 (5th Cir. 1985). Although Defendants assert they are entitled to dismissal of all claims against them, based on their entitlement to qualified immunity herein, some discovery may be necessary to resolve the issue of Plaintiff's claims pursuant to 42 U.S.C. §1983. Defendants would ask, however, that any such discovery be limited to the resolution of the issue of these Defendants' entitlement to immunity.

WHEREFORE, PREMISES CONSIDERED, Defendants **CITY OF LOS FRESNOS, TEXAS, JUAN C. SIERRA, SR., GONZALO ACEVEDO, IDA GARCIA** and **MIGUEL MENDOZA**, *Individually and in their Official Capacities*, would respectful request that this Court order that all discovery in this action be stayed, other than discovery relating to the issue of their entitlement to qualified immunity, until such time as that issue has been resolved, and for such other and further relief to which these Defendants may show themselves to be justly entitled, at law and in equity.

Signed on this the 6th day of November, 2000..

Respectfully submitted,

**LAW OFFICE
J. ARNOLD AGUILAR**
Artemis Square, Suite H-2
1200 Central Boulevard
Brownsville, Texas  78520
Telephone      :  (956) 504-1100
Facsimile      :  (956) 504-1408


By: _____
J. Arnold Aguilar
State Bar No. 00936270
Federal Adm. No. 6822

Attorney for Defendants,
CITY OF LOS FRESNOS, TEXAS, JUAN C.
SIERRA, SR., GONZALO ACEVEDO, IDA
GARCIA and MIGUEL MENDOZA, *Individually
and in their Official Capacities*

## CERTIFICATE OF CONFERENCE

I, J. Arnold Aguilar, hereby certify that on the 6th day of November, 2000, I conferred with counsel for Plaintiff regarding Defendants' Motion to Stay Discovery and Motion for More Definite Statement, and he is opposed to both motions.

J. Arnold Aguilar

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing **DEFENDANTS' MOTION TO DISMISS, MOTION FOR MORE DEFINITE STATEMENT and MOTION TO STAY DISCOVERY** has on this the _6th_ day of November, 2000, been forwarded via certified mail, return receipt requested to:

Mr. Ted Rodriguez, Jr.
LAW OFFICE OF ALFRED T. DENHAM
3700 North 10th Street, Suite 105
McAllen, TX 78501

J. Arnold Aguilar

V:\FP\MOTIONS\202-00.M2D

PAGE 18

# EXHIBIT "A"

CutePDF – www.fasiso.com

# CITY OF LOS FRESNOS

# PERSONNEL POLICIES MANUAL

ROBERTO CEPEDA ............. MAYOR

MELANIE McCORMICK ..... MAYOR PRO TEM

IDA GARCIA ........................ ALDERWOMAN

TOM JONES ......................... ALDERMAN

MIGUEL MENDOZA ............ ALDERMAN

JUAN MUNOZ ...................... ALDERMAN

ADOPTED BY RESOLUTION NO. _17-99_ ON _Dec. 14_____, 1999

CITY OF LOS FRESNOS, TEXAS

PERSONNEL POLICIES MANUAL

TABLE OF CONTENTS

CHAPTER 1 ~ INTRODUCTION                                             Page

    § 1-01.    Objectives of Policies                                  6
    § 1-02.    Equal Opportunity Policy                                6
    § 1-03.    Applicability and Scope                                 6
    § 1-04.    Dissemination and Familiarity of Policies               7
    § 1-05.    Administrative Authority                                7
    § 1-06.    Reservation of Rights                                   7
    § 1-07.    Other Laws and Regulations                              7

CHAPTER 2 ~ EMPLOYEE HIRING AND APPOINTMENT

    § 2-01.    Vacancies                                               8
    § 2-02.    Announcement of Vacancies                               8
    § 2-03.    Applications                                            8
    § 2-04.    Evaluation                                              8
    § 2-05.    Disqualification                                        8
    § 2-06.    Referral and Selection                                  9
    § 2-07.    Authority for Appointment                               9
    § 2-08.    Types of Appointments                                   9
    § 2-09.    Nepotism                                                9
    § 2-10.    Residency Requirements                                  9
    § 2-11.    Medical Examinations                                    9
    § 2-12.    Emergency Temporary Appointments                        9
    § 2-13.    Promotion Policy                                       10
    § 2-14.    Temporary Promotion                                    10
    § 2-15.    Transfers                                              10
    § 2-16.    Demotions                                              10
    § 2-17.    Reemployment                                           10
    § 2-18.    Employee Orientation                                   10
    § 2-19.    Reasonable Accommodation for Disabilities              11

CHAPTER 3 ~ PROBATION

    § 3-01.    Probationary Period                                    12
    § 3-02.    Benefit Eligibility                                    12
    § 3-03.    Purpose of Probationary Period                         12
    § 3-04.    No Fault Separation                                    12
    § 3-05.    Right of Appeal                                        12

CHAPTER 4 ~ PERFORMANCE EVALUATION AND COMPENSATION

    § 4-01.    Salary and Wage Plan                                   13
    § 4-02.    Employee Pay Schedule                                  13
    § 4-03.    Emergency Duty Pay                                     13

Chapter 4 continued ...                                                  Page

| | | |
|---|---|---|
| § 4-04. | Overtime and Compensatory Time | 13 |
| § 4-05. | Employee Performance Evaluation | 13 |
| § 4-06. | Termination Pay | 14 |

## CHAPTER 5 ~ ABSENCES AND LEAVES

| | | |
|---|---|---|
| § 5-01. | Holidays | 15 |
| § 5-02. | Vacation | 15 |
| § 5-03. | Sick Leave | 16 |
| § 5-04. | Bereavement Leave | 17 |
| § 5-05. | Military Leave | 17 |
| § 5-06. | Administrative Leave with Pay | 17 |
| § 5-07. | Family and Medical Leave Act | 18 |
| § 5-08. | Authorized Leave Without Pay | 19 |
| § 5-09. | Absence without Leave | 19 |

## CHAPTER 6 ~ EMPLOYEE CONDUCT

| | | |
|---|---|---|
| § 6-01. | Attendance | 20 |
| § 6-02. | Work Standards | 20 |
| § 6-03. | Political Activities | 20 |
| § 6-04. | Solicitation | 20 |
| § 6-05. | Outside Employment | 21 |
| § 6-06. | Personal Appearance | 21 |
| § 6-07. | Conflict of Interest, Solicitation, and Gifts | 21 |
| § 6-08. | General Deportment | 21 |
| § 6-09. | Sexual Harassment and Discrimination | 21 |
| § 6-10. | Definition of Sexual Harassment | 22 |
| § 6-11. | Reporting a Complaint | 22 |
| § 6-12. | Resolving the Complaint | 24 |
| § 6-13. | Grounds for Disciplinary Action | 24 |

## CHAPTER 7 ~ DISCIPLINE, APPEALS, AND GRIEVANCES

| | | |
|---|---|---|
| § 7-01. | Work Ethic and Disciplinary Policy | 26 |
| § 7-02. | Grounds for Disciplinary Action | 26 |
| § 7-03. | Types of Disciplinary Action | 26 |
| § 7-04. | Written Reprimand | 26 |
| § 7-05. | Suspension | 27 |
| § 7-06. | Disciplinary Demotion and Dismissal | 27 |
| § 7-07. | Voluntary Grievance Procedure | 27 |

## CHAPTER 8 ~ NONDISCIPLINARY TERMINATION

| | | |
|---|---|---|
| § 8-01. | Resignation | 28 |
| § 8-02. | Layoff | 28 |
| § 8-03. | Administrative Termination | 28 |
| § 8-04. | Retirement | 28 |

-4-

CHAPTER 9 ~ PERSONNEL RECORDS                                               Page

    § 9-01.    Personnel Files and Records    29
    § 9-02.    Personnel Reports    29

CHAPTER 10 ~ EMPLOYEE BENEFITS

    § 10-01.    Medical/Dental Benefits    30
    § 10-02.    Workers' Compensation Insurance    30
    § 10-03.    Social Security    30
    § 10-04.    Unemployment Insurance    30

CHAPTER 11 ~ TRAVEL POLICY

    § 11-01.    Applicability of Travel Policy    31
    § 11-02.    Authorization Required    31
    § 11-03.    Transportation Expenses    31
    § 11-04.    Food and Lodging    31
    § 11-05.    Entertainment    32
    § 11-06.    Travel Advances and Reports    32

CHAPTER 12 ~ VEHICLE POLICY

    § 12-01.    Purpose of Vehicle Policy    33
    § 12-02.    Applicability    33
    § 12-03.    Use of City Vehicles    33
    § 12-04.    Operation and Ridership    33
    § 12-05.    Safety, Maintenance and Care    33
    § 12-06.    Vehicle Log    33

CHAPTER 13 ~ DRUG AND ALCOHOL POLICY

    § 13-01    Statement of Purpose and Scope    34
    § 13-02.    Statement of Policy    34
    § 13-03.    Definition of Drug    34
    § 13-04.    Consequences of Violating the Drug and Abuse Policy    34
    § 13-05.    Possession and Use of and Search for Illegal and Unauthorized Items    34
    § 13-06.    Violations    35
    § 13-07.    Applicant Testing    35
    § 13-08.    Employee Testing    35
    § 13-09.    Disciplinary Action    36
    § 13-10.    Coordination with Law Enforcement Agencies    36

CHAPTER 14 ~ MISCELLANEOUS PROVISIONS

    § 14-01.    Safety    37
    § 14-02.    Coffee Breaks    37
    § 14-03.    News Releases    37
    § 14-04.    Lunch Periods    37
    § 14-05.    Unauthorized or Improper Use of Official Badge or Uniform    37
    § 14-06.    Smoking in the Workplace    37
    § 14-07.    Aids in the Workplace    38

# CHAPTER 1

## INTRODUCTION

### § 1-01.  OBJECTIVES OF POLICIES

The purpose of these policies is to bring into the service of the City of Los Fresnos a high degree of understanding, cooperation, efficiency, and unity which comes through a systematic application of good procedures in personnel administration, and to provide a uniform policy for all employees, with all of the benefits that such a program insures. The basic objectives of these policies are:

    (a)  To promote and increase efficiency and economy in the service of the City.

    (b)  To provide fair and equal opportunity to all qualified applicants to enter City employment on the basis of demonstrated qualifications, merit and fitness as ascertained through fair and practical methods of recruitment and selection.

    (c)  To develop a program of recruitment, advancement, and tenure which will make employment with the City attractive as a career and encourage each employee to render his/her best services to the City.

    (d)  To establish and promote high morale among City employees by providing a good working environment, uniform personnel policies, opportunity for advancement, and consideration for employee needs and desires.

### § 1-02.  EQUAL OPPORTUNITY POLICY

Discrimination against any person in recruitment, examination, appointment, training, promotion, discipline, termination, or any other aspect of personnel administration because of political or religious opinions or affiliations; because of membership in employee organizations; because that person reports a violation of the law; or because of race, color, creed/religion, national origin, sex, age, disability, veteran status, or any other legally protected status, or other non-merit factors is prohibited.  Discrimination on the basis of age, sex, physical handicap or disability is prohibited except where specific age, sex, or physical requirements constitute a bona fide occupational qualification necessary to proper and efficient administration.

### §1-03.  APPLICABILITY AND SCOPE

These policies apply to all City employees, including employees of the Los Fresnos Police Department, unless specified otherwise by state law, ordinance, resolution, or policy approved by the City Council.  A person on retainer or under contract is not considered to be a City employee in the absence of a specific agreement to that effect.  These policies are not applicable to volunteer firefighters or reserve police officers.

Nothing in this manual shall be considered to create a property right in employment.  It should be understood that employment is for an indefinite period and is at-will for both employer and employee.  These policies are not intended to constitute an employment contract or entitlement to continued employment with the city.  The City Council reserves the right to amend these policies unilaterally and without notice.

## §1-04.  DISSEMINATION AND FAMILIARITY OF POLICIES

All City employees shall be informed of the existence of these policies and each department head shall keep a copy available for reference by his/her employees.  Employee manuals outlining the general personnel policies of the City will be furnished to all employees for their personal use and reference.  The City Administrator shall require that all employees sign a statement stating that they have been furnished a copy of the employee manual outlining these policies.  It shall be the employee's responsibility to become thoroughly familiar with such policies.

## § 1-05.  ADMINISTRATIVE AUTHORITY

The City Council shall be responsible for establishing the policies under which personnel matters are to be administered.  With the exception of matters reserved to the City Council by statute, or these policies, the general and final authority for personnel management rests with the City Administrator who shall develop, administer, and interpret the personnel policies and procedures as they apply to all departments and employees.

Each department head is responsible within the scope of his/her authority for enforcing the provisions of these policies and related rules and procedures in regard to matters involving his/her department.  Department heads may prepare and enforce additional personnel policies within their department provided they are not inconsistent with these policies and have been approved by the City Administrator.

## § 1-06.  RESERVATION OF RIGHTS

Although adherence to this policy is considered a condition of continued employment, nothing in this policy alters an employee's status.  This policy shall not constitute nor be deemed a contract or promise of employment.  Employees remain free to resign their employment at any time, for any or no reason, without notice, and the City retains the right to terminate any employee at any time, for any or no reason, without notice.

## § 1-07.  OTHER LAWS AND REGULATIONS

The provisions of this policy shall apply in addition to, and shall be subordinated to, any requirements imposed by applicable federal, state, or local laws, regulations or judicial decision.  Unenforceable provisions of this policy shall be deemed to be deleted.

# CHAPTER 2

## EMPLOYEE HIRING AND APPOINTMENT

### § 2-01. VACANCIES

Department heads shall notify the City Administrator immediately when job vacancies occur in their department. Only those vacancies allocated in the annual budget, or new positions authorized by the City Council, shall be filled. Vacancies may be filled through public announcement, promotions, transfers, demotions, or reinstatement.

### § 2-02. ANNOUNCEMENT OF VACANCIES

The Personnel Department shall publicly announce, by appropriate means, all job vacancies. Each job announcement, insofar as practicable, shall specify the title, salary, and nature of the job, the required qualifications, whether competition is open to the general public or restricted to City employees, and the application deadline. Each announcement shall also contain a statement affirming the City's commitment to a policy of equal employment opportunity. An adequate period of time shall be allowed in the selection process to insure fair and open competition for the vacant position.

### § 2-03. APPLICATIONS

Applications for employment or reinstatement shall be submitted on forms as prescribed by the City Administrator. Only applications officially received in the prescribed manner shall be considered. All information submitted in connection with applying for City positions is subject to verification. All applications received shall be kept on active file for a period of one (1) year.

### § 2-04. EVALUATION

The primary goal of the City is to fill vacancies with the most qualified applicants available. The City Administrator or the department head shall determine the most appropriate means of evaluating applicants against job requirements to identify the best persons qualified. Reference checks, interviews, verification of citizenship or employment eligibility, skills tests, written tests, driver's license checks, drug screening, and/or other screening procedures may be used as deemed appropriate and, in all cases, shall be consistent with applicable employment laws and regulations. Applicants for police department positions may be subject to medical/psychological examinations and criminal history checks where relevant. Applicants may be required to provide any work experience and qualifications information necessary to demonstrate compliance with the prescribed qualification requirements or proficiency.

### § 2-05. DISQUALIFICATION

An applicant shall be disqualified from consideration if he/she:

    (a) does not meet the qualifications necessary for performance of the duties of the position involved;

    (b) has made any false statement of fact on the application, depending upon the seriousness, willfulness and applicability of the false information to the position as determined by the City Administrator;

    (c) is an alien not lawfully authorized to work in the United States; or

    (d) would be in violation of the Citys' nepotism policy or laws.

An applicant may also be disqualified from consideration upon other reasonable grounds relating to the job requirements.

## § 2-06.  REFERRAL AND SELECTION

The referral of applicants to department heads for selection shall be in accordance with procedures developed by the City Administrator.  All department heads shall make a written report as to the disposition of all referred applicants to the Personnel Department for record keeping purposes.

## § 2-07.  AUTHORITY FOR APPOINTMENT

Except as otherwise provided by state law or City ordinance, the appointing authority for all appointive positions shall rest with the City Council.  The City Council may delegate hiring authority to the City Administrator.

Appointments shall be made based on the qualifications of applicants as ascertained through fair and practical selection methods.  It shall be the goal of the City to appoint the most qualified applicant to the position.

## § 2-08.  TYPES OF APPOINTMENTS

An appointment is ordinarily of indefinite duration and may be made to a full time or part time position.  A full time position is one where an employee works at least forty (40) hours in a regular work week schedule, and receives full benefits as provided by the City.  A part time position is one where an employee works less than forty (40) hours in a regular work week schedule, and does not receive full benefits offered by the City.  An appointment may be made for a limited term in unusual circumstances.  Temporary appointments are ordinarily limited to six (6) months or less and may be made to full time or part time positions requiring continuous, seasonal, or intermittent performance.

## § 2-09.  NEPOTISM

No person related within the second degree of either affinity (marriage) or third degree consanguinity (blood) to the Mayor, or any member of the City Council or City Administrator, shall be appointed to any office, position, or other services of the City.  This prohibition shall not apply to police officers or employees who have been employed by the City continuously for more than six (6) months prior to the election of such member of the City Council or Mayor. In addition, the City Administrator shall not approve for appointment to any supervisor's work group any person who is related within the second degree of affinity or consanguinity to that supervisor.

## § 2-10.  RESIDENCY REQUIREMENTS

There shall be no absolute residency requirements for a City employee except that those employees likely to be called to work in cases of emergency may be required to reside within reasonable commuting ranges of their places of work. For these purposes, a reasonable commuting distance shall be within ten (10) minutes of the City.

## § 2-11.  MEDICAL EXAMINATIONS

A person who has been offered employment by the Los Fresnos Police Department may be required to take a medical and physical examination at the City's expense, given by a doctor designated by the City.  The offer of employment will be conditional upon the results of the examination; however, these results will not be used to discriminate on the basis of a qualified disability.  The information obtained regarding a medical condition or history, will be collected and maintained in separate medical files and shall be treated as confidential medical information.  The Chief of Police, acting upon information provide by medical personnel, shall be the final authority in determining medical suitability for employment.

## § 2-12.  EMERGENCY TEMPORARY APPOINTMENTS

The City Administrator is authorized to hire temporary or part-time employees in cases of emergencies or unusual or extraordinary circumstances which impose demands that exceed the manpower capabilities of the City.  Emergency

CZ4PDF - www.finebit.com

temporary appointments shall not be used to circumvent the normal appointment procedures. The employees involved shall not acquire any status or rights in the position to which they are temporarily appointed.

## § 2-13. PROMOTION POLICY

A promotion is the assignment of an employee from one position to another job which is at a higher salary. It shall be the City policy to provide promotional opportunities whenever possible and practical. The selection process may be limited to qualified City employees or such other employees that may be given preference in the application and/or consideration process. Opportunities for promotion across organizational lines shall be maximized, with approval from the City Administrator being necessary prior to such promotion.

## § 2-14. TEMPORARY PROMOTION

The City Administrator may authorize a temporary promotion to insure the proper performance of City functions if a position is vacant, or its' regular employee is absent. Employees so promoted shall be additionally compensated for the duration of their temporary assignments, in amounts to be determined by the City Administrator. However, temporary promotions shall not be used to circumvent normal selection procedures, and those employees involved shall not acquire any status or rights in the position to which temporarily promoted.

Nothing herein shall be construed to prevent the assignment of additional or a higher level of duties to an employee without additional compensation.

## § 2-15. TRANSFERS

A transfer is the reassignment of an employee from one position to another, involving no change of pay or salary. A transfer not involving promotion or demotion may be effected at any time for administrative convenience or necessity, or upon request of the employee to the department head, or if interdepartmental, to the City Administrator, provided that the employee is qualified to perform the duties of the position to which a transfer is contemplated. Transfers may be made administratively or in conjunction with an announced selection process. Transfers between classes or between departments shall become effective following approval of the City Council.

## § 2-16. DEMOTIONS

A demotion is the assignment of an employee from one position to another position which is at a lower salary. A demotion may be effected for disciplinary action. Upon recommendation of the employee's department head, and with the approval of the City Administrator, and if qualified to perform the duties of the lower level position, an employee may be administratively demoted at his/her own request, or as an alternative to layoff. Such demotions shall not be considered as disciplinary actions or to disqualify the employee involved from consideration for later advancement. Demotions when used as an alternative to layoff, may be fully or partially rescinded at any time.

## § 2-17. REEMPLOYMENT

Former employees who have not been terminated for cause, may be eligible for reemployment, and may be given preference over other job applicants provided they meet the minimum requirements and qualifications of the position, and it is in the best interest of the City.

## § 2-18. EMPLOYEE ORIENTATION

All new employees shall be given an orientation about the nature of the job, the benefits, obligations, and responsibilities of the position, and the general policies and procedures, of both the City and the department in which he/she is to be employed. In addition, the City will obtain such information needed for insurance programs, determining citizenship status, etc., that was not provided in the application for employment. The employee shall also

be furnished with a copy of the City Personnel Policy for their personal use and reference at this time, and the employee, by signature, shall acknowledge its' receipt.

## § 2-19.  REASONABLE ACCOMMODATION FOR DISABILITIES

When an otherwise qualified employee is determined by medical authority to possess a physical or mental limitation, the department head and/or City Administrator will review the case and decide whether reasonable accommodation is available, as required by law.  Applicants with known physical or mental limitations will be provided with reasonable accommodations to City facilities.  Any employee or applicant with known physical or mental limitations who believes reasonable accommodation is not being provided, may submit a written grievance according to the voluntary grievance procedures found in § 7-06 hereof.

# CHAPTER 3

## PROBATION

### § 3-01.  PROBATIONARY PERIOD

Every newly employed person or promoted employee, shall be required to successfully complete a probationary period of six (6) months.  Whenever a license or certification is required for a non-civil service position, the probationary period may be extended for a period of time permitted by state or federal law, to obtain such license or certification.

As prescribed by state law, a person appointed to a beginning position in the Police Department must serve a probationary period of one (1) year, beginning on that person's date of employment.

During or before the end of the probationary period, the supervisor may discharge or discipline any employee, and such disciplinary action or discharge, shall not be subject to any grievance or arbitration.

### § 3-02.  BENEFIT ELIGIBILITY

During the probationary period, a new employee shall be eligible for benefits in accordance with the eligibility requirements stated with each policy describing a benefit.

### § 3-03.  PURPOSE OF PROBATIONARY PERIOD

The department heads shall use the probationary period to closely observe and evaluate, the work and fitness of employees, and to encourage adjustment to their jobs.   Only those employees who meet acceptable standards and minimum job qualifications during their probationary periods, shall be retained.  Department heads shall submit an evaluation report on each probationary employee to the City Administrator prior to the completion of the probation. In the cause of appointing or promoting department heads, the performance during probationary period shall be evaluated by the City Administrator.

### § 3-04.  NO FAULT SEPARATION

During the probationary period, if the department head decides that the new employee is not suited for the job, or that the employee's continued employment may not be in the best interest of the City, the department head shall recommend to the City Administrator an immediate "no fault" separation, which will not reflect negatively in the employee's records.

The City Administrator shall review the employee's performance record, and have the final decision concerning the employee's "no fault" separation.

### § 3-05.  RIGHT OF APPEAL

A new employee who receives a "no fault" separation under the provisions of this policy shall have no right to appeal the separation, except on the grounds of discrimination prohibited by law.

-12-

# CHAPTER 4

## PERFORMANCE EVALUATION & COMPENSATION

### § 4-01.  SALARY AND WAGE PLAN

Subject to approval by the City Council, the City Administrator shall prepare and administer a written compensation plan for City employees.  This compensation plan shall be prepared annually, and submitted to the City Council for approval at the time of adoption of the annual City budget.  City employees shall be paid salaries of wages in accordance with the compensation plan.

### § 4-02.  EMPLOYEE PAY SCHEDULE

All employees will be paid weekly on Friday.  Pay dates falling on a recognized holidays will be scheduled for the preceding workday.

When an employee is on authorized leave, the employee may pick up his/her paycheck from the Finance Department, or have an authorized representative pick it up.

### § 4-03.  EMERGENCY DUTY PAY

Employees called back to work in emergencies, shall be compensated in accordance with established overtime policies.

### § 4-04.  OVERTIME AND COMPENSATORY TIME

All non-exempt employees are eligible to receive overtime in accordance with the Fair Labor Standards Act.  Overtime, when ordered for the maintenance of essential City functions, shall be allocated as evenly as possible among all employees qualified to perform the work.  For all scheduled and approved time worked in excess of a regular work week, compensation will be at the rate of one and one-half (1½) times the employee's regular base pay.  Overtime will be allocated for all time worked over forty (40) hours per week, unless such employees are exempt from overtime pay.  No sick time, vacation time, holiday time, or time taken for jury duty, or for traveling to and from schools, conferences, or seminars, shall be considered when determining overtime pay.  All overtime work must be clearly reflected on the employee's time record before it is approved.

A non-exempt employee who works overtime during a workweek shall, at City's discretion, either:

    (1)  Be compensated at a rate of one and one-half (1½) times his/her regular rate for all overtime hours worked; or

    (2)  with the mutual agreement of the employee and department head be given compensatory time at a rate of one and one-half (1½) hours compensatory time for each overtime hour worked.

An exempt employee who works overtime during a workweek, may be given compensatory time at a rate of one and one-half (1½) hours compensatory time for each overtime hour worked.

### § 4-05.  EMPLOYEE PERFORMANCE EVALUATION

The work performance of each regular employee shall be evaluated in accordance with appraisal procedures developed and approved by the City Council.  An employee shall be evaluated at least annually.  Special evaluations may be conducted if requested by the department head, and approved by the City Administrator.  Performance evaluation

reports shall be on forms provided by the City Administrator through the Personnel Office. All performance evaluation reports shall be signed by the employee, and permanently placed in the employee's personnel file. Employees shall be provided copies of their performance evaluation reports if requested.

The performance evaluation is designed to help supervisors and employees measure how well work is being performed, and to provide a tool for management decisions regarding pay increase, promotions, and retention of employees.

Evaluators shall discuss the evaluation results with the individual employees, and shall counsel them regarding their careers, and any improvement in performance which appear desirable or necessary. Employees dissatisfied with their performance evaluation may seek reconsideration by using the established Voluntary Grievance Procedures found in § 7-07 hereof.

## § 4-06. TERMINATION PAY

Employees who leave the service of the City shall receive all pay which may be due to them in accordance as follows:

    (a)  A non-exempt employee will be paid for any hours worked, and for any overtime compensation due to him or her, or compensatory time off. Exempt employees will be paid for hours worked only.

    (b)  Only employees who have successfully completed their probationary period shall be paid for unused vacation time earned.

    (c)  Any indebtedness to the City which the employee might have incurred, shall be deducted from his/her final paycheck.

    (d)  If an employee dies while employed by the City, the City shall pay his/her designated beneficiary any unpaid pay, unused vacation time, and accumulated benefits.

    (e)  Terminated employees are required to turn in all records and other property of the City to their department head or another authorized person.

## CHAPTER 5

## ABSENCES AND LEAVES

### § 5-01.  HOLIDAYS

In addition to any days as may be declared by the City Council, the following days shall be observed as official holidays: New Year's Day, Good Friday, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and the day after, Christmas Eve and Christmas Day.   Said official holidays shall be administered in accordance with the following rules:

(a)  All full time employees shall be entitled to all paid holidays

(b)  All part time employees who would normally have worked on a day of the week observed as a holiday, shall be entitled to holidays with pay for the number of hours they would have worked on that day if the holiday had not occurred.

(c)  As many employees as possible shall be given each holiday off, consistent with the maintenance of essential City functions.  All department heads shall insure that employees working unusual schedules, or on shifts, receive benefits for the full number of official holidays.

(d)  Employees required to work on a scheduled holiday shall be granted another day of paid leave or receive compensation in its place.  In the event that another day of paid leave is selected, it must be taken within thirty (30) days, or the employee will automatically receive compensation in its place.

(e)  If the holiday falls on Saturday, the preceding Friday shall be observed; if a holiday falls on Sunday, the following Monday shall be observed.

(f)  To receive pay for a holiday, an employee must be scheduled to work on the holiday, or be on authorized leave.

(g)  Employees desiring to observe religious holidays not coinciding with official holidays, may be given time off without pay, or may be authorized to use accrued vacation leave.

### § 5-02.  VACATION

Vacation accrual for permanent employees begins on their date of appointment.  Vacation time is accumulated as reflected below.  Vacation time may not be accrued to exceed a total of two years authorized vacation leave.  On January 1 of each year, all accrued vacation time in excess of the amount authorized will be dropped from the vacation leave roster.  The number of days vacation authorized, will be as prescribed by the City Council, but not less than the following schedule.

Paid vacations may be taken according to the following schedule:

| Length of Service | Vacation Allowed | Maximum Accruable Vacation Leave |
|---|---|---|
| 1 year | 5 days | 10 days |
| 2 through 3 years | 10 days | 20 days |
| 4 through 5 years | 12 days | 24 days |
| 6 through 10 years | 15 days | 30 days |
| 11 years & over | 20 days | 40 days |

-15-

Vacation leave shall be administered according to the following rules:

(a)  Vacation leave shall accrue from the date of employment, including the probationary period.

(b)  Employees shall not be eligible to take vacation leave until completion of one year.

(c)  After the employee's first year of service, employees shall be encouraged to use their full vacation allowance before the end of each fiscal year.  Unused vacation leave may be carried over into the following fiscal year, see vacation schedule.  All unused vacation time in excess of the maximum accrual allowable shall be forfeited.

(d)  When a regularly scheduled holiday occurs during the period of an employee's vacation, an additional day of leave shall be granted.

(e)  Vacation leave shall be charged only for time during which the employee would ordinarily have worked.

(f)  Employees being laterally transferred, promoted, or demoted shall retain any accrued vacation leave.

(g)  Vacation leave credits are not transferable between employees.

(h)  Before going on unpaid leave, employees are encouraged to exhaust accrued vacation when a Family Medical Leave Act (FMLA) qualifying event occurs.

## § 5-03.  SICK LEAVE

All full time employees shall earn sick leave at the rate of eight (8) hours per month, for a total of ninety-six (96) hours of sick leave per year, after the (thirty) 30 day waiting period.  Part time, temporary, and seasonal employees shall not earn sick leave.

Sick leave is granted by the City for the purpose of permitting an employee to be relieved of his/her duties during his/her actual illness or injury, or when an employee is required to attend to his/her spouse or minor children who are ill or incapacitated, and who also reside in the same household as the employee.  Sick leave may also be used for dental and ocular appointments.  Employees who use their sick leave without just cause may be dismissed.

Supervisors may require a doctor's statement from any employee who uses any sick leave credit if deemed warranted. Also, employees missing more than three (3) consecutive workdays due to illness or injury shall provide a statement from his/her doctor regarding the illness.  Failure to do so, may result in dismissal, suspension, and/or forfeiture of such pay.

Non-civil service employees may accumulate sick leave benefits up to a maximum of nine hundred and sixty (960) hours [one hundred and twenty (120) days] and shall be administered according to the followings rules:

(a)  Sick leave shall accrue from the date of employment, including the probationary period, after a (thirty) 30 day waiting period.

(b)  Sick leave may not be taken in advance of its being earned.

(c)  If an employee becomes ill and cannot report for work, the employee must report his/her absence to his/her immediate supervisor on or before his/her regular reporting time, so that such absence be charged to sick leave.  Failure to report in, will cause an employee's absence to be charged to leave without pay.

-16-

(d) An employee who becomes ill or injured during a vacation may request that the vacation be terminated and the time of illness be charged to sick leave. Such requests must be made immediately to the department head, or no later than the first regularly scheduled work day following vacation. A doctor's statement will normally be required in such instances.

(e) After an employee's accumulated sick leave has been exhausted, accrued vacation may be used as sick leave. When absence due to illness exceeds the amount of paid leave earned and authorized, the pay of an employee shall be discontinued until he/she returns to work.

(f) An employee who is pregnant may use accrued sick leave for maternity purposes prior to delivery and for a reasonable time following delivery, as may be deemed necessary by her physician.

(g) An employee terminating from employment with the City, must submit certification of illness from a doctor before being eligible to use sick leave in the last two (2) calendar weeks of employment.

(h) Accumulated sick leave will not be compensated for in any way, at the time of termination, whether by resignation, retirement, or dismissal, for non-civil service employees.

(i) An employee may use accrued sick leave to attend funerals and handle any necessary funeral details.

(j) Before going on unpaid leave, employees are encouraged to exhaust accrued sick leave when a Family Medical Leave Act (FMLA) qualifying event occurs.

## § 5-04. BEREAVEMENT LEAVE

Bereavement leave shall be taken in accordance with section § 5-03, subsection (i).

## § 5-05. MILITARY LEAVE

Full time employees of the City who are members of the State Military Forces, or members of any of the Reserve Components of the Armed Forces of the United States, are entitled to leave of absence from their duties for up to fifteen (15) days in any one calendar year, without loss of vacation time or salary. Said leave may be used for all days during which they are engaged in authorized training or duty. Requests for approval of military leave must be accompanied by copies of the relevant military orders. Military leave in excess of fifteen (15) days will be charged to vacation leave or leave without pay.

Full time employees of the City who enter active duty with the State Military Forces, or with the Armed Forces of the United States, are entitled to be restored to employed subject to the provisions of the law upon honorable release from active duty, provided an appropriate position is available. Reemployment of such individuals are subject to the approval of the City Administrator.

## § 5-06. ADMINISTRATIVE LEAVE WITH PAY

Administrative leave with pay will be granted by the City Administrator according to the following guidelines:

(a) Employees on duty on the date of any national, state, or local election, and who are eligible to vote in such elections, shall be granted time off without loss of pay or benefits, to exercise this right if they cannot reach their polling place outside of working hours before they close. Evidence of voter registration and voting may be required by the supervisor.

(b) Employees shall be granted sufficient leave with pay when called for jury service or court duty. The employee shall provide his/her supervisor a copy of the jury or court summons. Employees excused or

-17-

released from jury service or court duty shall immediately report to their work station for the remainder of their shift.

(c) Employees who make donations of blood without receiving compensation for it, will be excused from duty without loss of pay or benefits. Employees will be excused for such times as it is necessary to make blood donations and to recuperate, if needed. The excused absence will not exceed four (4) hours and will be authorized for only the day of the donation.

(d) The City Administrator may grant an employee administrative leave with pay for purposes of attending a professional conference, convention, training activity, legislative proceeding, civic function or meeting, or for purposes of coordinating with governmental and private agencies and entities in the interest of the City.

## § 5-07. FAMILY AND MEDICAL LEAVE ACT

Under the Family Medical Leave Act of 1993 (FMLA), any employee who has been employed for at least twelve (12) months and who has a minimum of 1,250 hours of service during the previous twelve month period, prior to the beginning of the leave, is entitled to twelve weeks of unpaid leave for the following:

(a) the birth of the employee's son or daughter, and care of the infant;

(b) the placement of a son or daughter with the employee for adoption or foster care;

(c) the care of a spouse, son, daughter or parent of the employee, if the spouse, son, daughter or parent has a serious health condition; or

(d) the employee's own serious health condition, which makes the employee unable to perform the functions of his or her job.

Additional provisions made by FMLA are the following:

(a) **Intermittent Leave** - Leave taken for the care of a sick spouse or other family members, or for a serious health condition of the employee, may be taken intermittently or on a reduced leave schedule. Leave taken for the birth, adoption, or foster care of a child, may not be taken intermittently, unless the employee's request for such is approved by the City Administrator.

(b) **Deduction of Leave Time** - In order to lessen the impact of the loss of wages due to family and medical leaves, the City will recommend that the employee substitute for any portion of the family and medical leave, any or all, vacation and/or sick leave accrued by the employee.

(c) **Medical Certification** - The City will require that the employee submit a certified medical statement and reasonable intermittent statement of medical care as the leave continues. The City reserves the right to challenge the medical certification, at the City's expense, and require the employee to submit to a complete examination by a doctor designated by the City.

(d) **Employment Status** - When an employee returns from such leave, he/she will be restored to the position at the same pay. With the exception of civil service personnel, during the leave the employee does not accrue seniority or leave benefits.

(e) **Health Benefits** - The City will maintain coverage under the group health plans for the employee during the leave; however, employee contributions for dependent coverage will continue to be the responsibility of the employee, in accordance with the current rates established by the City.

## § 5-08.  AUTHORIZED LEAVE WITHOUT PAY

In circumstances not falling within other provisions of these rules, the City Administrator may authorize an employee to take leave without pay under mutually agreeable terms and conditions.   Employees taking leave without pay shall not lose or gain seniority.  All employee benefits will remain in effect during period of authorized leave without pay, for a period up to twelve (12) weeks.  Any employee who fails to return to work at the end of the authorized leave without pay, shall be administratively terminated.

## § 5-09.  ABSENCE WITHOUT LEAVE

An employee failing to report for duty, or remain at work as scheduled, without proper notification, authorization, or excuse, shall be considered absent without leave, and shall not be paid for the period involved.

Absence without leave for three (3) consecutive days in an employee's schedule, constitutes abandonment of duties, which shall result in dismissal.

## CHAPTER 6

## EMPLOYEE CONDUCT

### § 6-01.  ATTENDANCE

All employees are expected to report to work as scheduled, and to work their scheduled hours, and overtime, if necessary.  Employees shall be at their place of work in accordance with City and departmental policies and regulations.  Department heads shall establish work schedules and maintain daily employee attendance records.  The Personnel Office will maintain annual employee attendance records.

### § 6-02.  WORK STANDARDS

It shall be the duty of each employee to maintain high standards of cooperation, proficiency, and economy in his/her work for the City.  Department heads shall organize and direct the work of their departments to achieve these objectives.  If work habits, attitude, production and/or personal conduct of an employee becomes a problem, supervisors should point out the deficiencies at the time they are observed, and take appropriate action.  Counseling and warning the employee in sufficient time for improvement should ordinarily precede formal disciplinary action, but nothing herein shall prevent immediate formal action as provided elsewhere in these policies whenever the interest of the City requires it.

### § 6-03.  POLITICAL ACTIVITIES

Except as may be otherwise provided by law, the following restrictions on political activity shall apply to City employees:

(a)  Employees shall refrain from publicly using their positions, for or against, any candidate for public office in any jurisdiction.

(b)  No employee, while on duty, shall take an active part in any political campaign of another person for an elective position of the City.  The term "active part" means making political speeches, passing out cards or other political literature, writing letters, signing petitions, actively and openly soliciting votes, and making public remarks about the candidates.

In compliance with the Texas Election Code, electioneering is prohibited during the voting period and within one hundred (100) feet of an outside door, through which a voter may enter the building in, which a polling place is located.  During the time that absentee voting is being conducted, the distance is reduced to thirty (30) feet.

(c)  Employees may not be required to contribute money, labor, time, or any other valuable thing to any person for City election purposes.

(d)  No employee may hold, with or without remuneration, an appointive or elective City office of public trust, partisan office in any jurisdiction, or any other office, where service would constitute a direct conflict of interest with City employment.

### § 6-04.  SOLICITATION

Solicitation of contributions, or anything of value, for any purpose whatsoever, shall be permitted of or by City employees on the job only with the expressed approval of the City Administrator.  No employee may be required to make any contribution or may be penalized or rewarded in any way, in connection with his/her employment according to his/her response to the solicitation.

## § 6-05.  OUTSIDE EMPLOYMENT

Although outside employment is not expressly prohibited by the City, employees who work other jobs on their own time must remember that their first responsibility is to the City.  If a second job leads to excessive absenteeism, tardiness, or poor performance, the employee may be asked to choose between the two jobs.  Any employee subject to recall or emergency duty, must receive written permission from the City Administrator or department head to work a second job.  The City Administrator and department head may establish certain conditions before granting this permission, e.g., work must be located within the City, or within a reasonable commuting distance; the outside employer may be required to excuse employee to answer emergency calls, employment would not create any conflict or embarrassment to the City, etc.  City Administrator must have permission from City Council before seeking outside employment.  Therefore, no employee may hold a position with any other local governmental entity, the nature of which places that employee in a position of title.  Title, as used here, shall mean a position which gives the employee overall or final authority for the work he or she performs.  Violation of this policy section may be grounds for dismissal or disciplinary action.

## § 6-06.  PERSONAL APPEARANCE

All employees, regardless of work location and degree of public contact, are expected to maintain a good personal appearance, and an acceptable standard of cleanliness and personal hygiene at all times.

## § 6-07.  CONFLICT OF INTEREST, SOLICITATION, AND GIFTS

No officer or employee of the City shall solicit or accept, directly or indirectly, any gift, favor, privilege, or employment having a monetary value in excess of twenty-five dollars ($25.00) from any person, firm, or corporation doing business with, or seeking to do business with the City, during the term of office of such officer, or during the employment of such employee of the City, and in connection with such office or employment, except as may be authorized by ordinance or on behalf of the City and for its benefit.  Under no circumstance shall cash or any instrument of cash having monetary value be accepted.  No officer or employee of the City who is employed, directly or indirectly, by any person, firm, or corporation doing business with, or seeking to do business with the City, shall in any manner participate in any discussion or decision of any agency, board, commission, or instrumentality of the City, having to do with the business done, or sought, to be done with the City by such person, firm or corporation, without first declaring publicly such employment.

## § 6-08.  GENERAL DEPORTMENT

The attitude and deportment of a City employee, whether in public or private, should at all times be such, as to promote the good will and favorable attitude of the public toward the City administration, and its programs and policies.

## § 6-09.  SEXUAL HARASSMENT AND DISCRIMINATION

The City of Los Fresnos is committed to providing a work environment that is free of discrimination and unlawful harassment.  Actions, words, jokes, or comments based on an individual's sex, race, ethnicity, age, religion, disability or any other legally protected characteristic will not be tolerated.  The City of Los Fresnos is also committed to a work environment free of inappropriate and disrespectful conduct, illustrations, and communications of a sexual nature.  Consequently, and in an effort to avoid even the appearance of impropriety, this policy against sexual harassment in some respects, may exceed the requirements of applicable law.  The City of Los Fresnos strongly opposes sexual harassment in any form.  It does not matter whether the victims is male or female.  Sexual harassment is against company policy and is a violation of Title VII of the Civil Rights Act of 1964, as well as the applicable laws of the state.

CVPDF - www.fasoo.com

## § 6-10.  DEFINITION OF SEXUAL HARASSMENT

For purposes of this policy, sexual harassment is defined as unwelcome or unwanted sexual advances, requests for sexual favors, or other verbal, non-verbal or physical conduct of a sexual nature when: (1) submission to or rejection of this conduct by an individual, is used explicitly or implicitly, as a factor in decisions affecting hiring, evaluation, promotion, or other aspects of employment; or (2) this conduct substantially interferes with an individual's employment or creates an intimidating, hostile or offensive work environment.

Examples of sexual harassment include, but are not limited to, unwanted sexual advances; demands for sexual favors in exchange for favorable treatment or continued employment; repeated sexual jokes, flirtations, advances or propositions; verbal abuse of a sexual nature; graphic, verbal commentary about an individual's body, sexual prowess or sexual deficiencies; leering; whistling; touching; pinching; assault; coerced sexual acts; suggestive insulting, obscene comments or gestures; and display in the workplace of sexually suggestive objects or pictures.

This behavior is unacceptable in the workplace itself, and by any owner, partner or employee in any business-related setting outside the workplace, including but not limited to other work-related settings such as business trips, court appearances and business-related social events.

## § 6-11.  REPORTING A COMPLAINT

### A.  Informal Procedure

The City of Los Fresnos encourages individuals who believe they are being harassed to clearly and promptly notify the offender that his or her behavior is unwelcome.  If for any reason an individual does not wish to approach the offender directly, or if such discussion does not successfully end the harassment, the individual should notify a member of the Committee [as described below] who may talk to the alleged harasser, or arrange for mediation between the individual and the alleged harasser, with a third person acceptable to both.  This informal procedure is not a required first step for the reporting individual.

### B.  Formal Procedure

In the event that the reporting individual does not wish to pursue the informal procedure, or in the event that the informal procedure does not produce a result satisfactory to the reporting individual, the following steps should be followed to report the sexual harassment complaint and to initiate a formal procedure:

#### 1.  Notification of a Member of the Staff

An individual who believes he or she has been subjected to sexual harassment should report the incident to any member of the Committee.  The current members of the committee are the department head or City Administrator.

#### 2.  Description of Misconduct

An accurate record of objectionable behavior is necessary to resolve a formal complaint of sexual harassment. All complaints of sexual harassment must be reduced to writing by either the reporting individual or the individual(s) designated to receive complaints.

#### 3.  Time for Reporting a Complaint

Prompt reporting of complaints is strongly encouraged, as it allows for rapid response and resolution of objectionable behavior or conditions for the reporting individual and any other affected employees.

-22-

The City has chosen not to impose a limited time frame for the reporting of sexual harassment complaints. However, the reporting individual should be aware that applicable statutes of limitations do constrain the time for instituting outside legal action.

**4. Protection Against Retaliation**

The City of Los Fresnos will not retaliate against an individual who makes a report of sexual harassment, nor permit any employee to do so. Retaliation is a very serious violation of this policy, and should be reported immediately. Any individual found to have retaliated against an individual for reporting sexual harassment, or against anyone participating in the investigation of a complaint, will be subject to appropriate disciplinary procedures as described below. (See "Resolving the Complaint.")

## C. Confidentiality

Any allegation of sexual harassment brought to the attention of the department head or City Administrator, will be promptly investigated. Confidentiality will be maintained throughout the investigatory process to the extent practical and appropriate under the circumstance.

## D. Identification of Investigators

Complaints will be initially investigated by the department head or City Administrator to whom it was reported, unless they determine another person should be the investigator.

## E. Investigator Process

The investigation process may include any or all of the following:

(a) Confirm name and position of the reporting individual.

(b) Identify the alleged harasser.

(c) Thoroughly ascertain all facts in connection with the alleged incident, beginning by interviewing the reporting individual and the alleged harasser. Questions of all parties should be asked in a non-judgmental manner.

(d) Determine the frequency/type of alleged harassment and, if possible, the dates and locations where alleged harassment occurred.

(e) Find out if any witness observed the alleged harassment. If the reporting individual and the alleged harasser present conflicting versions of the facts, interview any witnesses.

(f) Ask how the reporting individual responded to the alleged harassment, and determine what efforts, if any, at informal resolution, of the matter were made.

(g) Determine whether the reporting individual consulted anyone else about the alleged harassment, and take note of who else knows, and their response to the disclosure.

(h) Develop a thorough understanding of the professional relationship, degree of control, and amount of interaction, between the alleged harasser and reporting individual.

-23-

(i) Determine whether the reporting individual knows of, or suspects, that there are other individuals who have been harassed by the alleged harasser.

(j) Determine whether the reporting individual informed other partners or supervisors of the situation, and what response, if any, the reporting individual received from these individuals.

(k) During the first interview with the alleged harasser, remind the alleged harasser of the City's policy against retaliation for making a complaint of sexual harassment.

In pursuing the investigation, the investigator will try to take the wishes of the reporting individual into consideration, but should thoroughly investigate the matter, keeping both parties informed as to the status of the investigation.

## § 6-12. RESOLVING THE COMPLAINT

Upon completing the investigation, the City Council will review the investigation, make findings, and will decide upon appropriate action to be taken, and will communicate its findings and intended actions, to the reporting individual and alleged harasser. If the City Council finds that harassment occurred, the harasser will be subject to appropriate disciplinary procedures.

### A. Sanctions for harassment

Individuals found to have engaged in misconduct constituting sexual harassment shall be disciplined. Appropriate sanctions will be determined by the City Council. In addressing incidents of sexual harassment, the City's response at a minimum, will include reprimanding the offender and preparing a written record. Additional action may include: referral to counseling, withholding of a promotion, reassignment, temporary suspension without pay, reduction in allocation, discharge, or removal or expulsion from the City.

## § 6-13. RULES OF CONDUCT

The City Administrator or department head may take disciplinary action against an employee for the following:

(a) Illegal, unethical, abusive, or unsafe acts.

(b) Violation of City rules, regulations, policies or procedures.

(c) Insubordination.

(d) Leave under false pretenses.

(e) Incompetence.

(f) Neglect of duties.

(g) Theft.

(h) Participation in prohibited political activities.

(i) Unauthorized soliciting while on duty.

(j) Excessive or unauthorized absenteeism and tardiness.

(k) Failure to conduct himself/herself in a courteous and proper manner while on duty.

(l)   Falsification of official documents or records.

(m)  Unauthorized use or disclosure of official information.

(n)   Unauthorized use of official authority.

(o)   Possession, use, or being under the influence, of alcoholic beverages or of drugs, not prescribed by a physician, while on duty.

(p)   Willfully or negligently damaging City equipment, tools, machines, and/or property.

(q)   Wasting materials and supplies.

(r)   Carelessness, recklessness, and/or engaging in horseplay.

(s)   Abuse of illness, injury, disability leave, or other benefits.

(t)   Any threat or physical attack on any supervisor or co-worker.

(u)   Failure to properly document time and attendance records.

(v)   Sexual harassment and discrimination.

This list is to illustrate the more common causes and is not intended to be all inclusive.

# CHAPTER 7

## DISCIPLINE, APPEALS, & GRIEVANCES

### § 7-01. WORK ETHIC AND DISCIPLINARY POLICY

The City expects its employees to accept reasonable and appropriate work assignments willingly, and to perform them in a satisfactory manner. Employees are also expected to comply with all rules, regulations, and policies pertaining to job performance standards, and personal conduct on the job. If an employee fails to perform satisfactorily, or if his/her personal conduct is unacceptable, disciplinary action may be taken.

All reasonable efforts will be made insure due process to the employee. The City will attempt to review and resolve all employee problems as promptly and equitable as possible, and at the lowest possible organization/supervisory level. All employees will be provided with a fair, expedient, objective, and consistent means of resolving work related problems.

### § 7-02. GROUNDS FOR DISCIPLINARY ACTION

The City Administrator or department head may take disciplinary action against an employee for any Rules of Conduct listed in Chapter § 6.14

### § 7-03. TYPES OF DISCIPLINARY ACTION

Formal disciplinary action taken, shall be consistent with the nature of the deficiency, or infraction involved, and the record of the employee. Formal disciplinary action shall include written reprimand, suspension, reduction in pay, demotion and dismissal. Any of the foregoing types of formal disciplinary action may be invoked for a particular deficiency or infraction, depending upon the circumstances. An employee may be formally warned at any time, that he/she may be dismissed or otherwise disciplined, for further unsatisfactory performance and/or conduct. Nothing herein shall prohibit the administration of informal disciplinary action, such as oral reprimands. Informal disciplinary action may be documented in the employee's official personnel file at the discretion of the department head.

Supervisory personnel are encouraged to consider the following as normal disciplinary transitional steps in situations requiring disciplinary action:

> **Verbal Warnings** with records of each warning being noted in the employee's official personnel file;

> **Written Reprimands** a copy of which the department head must provide to the employee, and deliver to the City Administrator before placement in the employee's official personnel file;

> **Suspension with or without Pay** or **Reduction in Pay** with prior written approval by the City Administrator.

> **Demotion** and/or **Dismissal** by the City Administrator, Department Head, or City Council.

Nothing herein is intended to negate the authority and responsibilities of a supervisor to take the disciplinary action they believe appropriate, based upon the relevant circumstances, nor prohibit the supervisor from immediately discharging an employee for the first instance of misconduct, depending upon the circumstances.

### §7-04. WRITTEN REPRIMAND

In the interest of good discipline, an employee may be formally reprimanded in writing. The reprimand shall describe the deficiency or infraction involved, the corrective action, and the likely consequence of further unsatisfactory

CSMPDF - www.fenrir.com

performance and/or conduct. The employee will be informed the written reprimand shall be kept in the employee's official personnel file.

## § 7-05. SUSPENSION

In the interest of good discipline, an employee may be suspended without pay for up to thirty (30) calendar days in any one (1) calendar year.

A notice of suspension must be given to the employee, and must describe the deficiency or infraction involved, the corrective action offered to the employee, and the likely consequences of further unsatisfactory performance and/or conduct. The suspension shall be permanently noted in the employee's official personnel file.

When an employee is under investigation for a crime or official misconduct, or is awaiting hearing or trial in a criminal matter, he/she may be suspended, with or without pay, for the duration of the proceedings, when such suspension would be in the best interest of the City and the public. If the investigation or proceedings clear the employee, he/she shall be eligible for reinstatement with back pay, and full benefits restored.

## §7-06.  DISCIPLINARY DEMOTION AND DISMISSAL

In the interest of good discipline, an employee may be demoted. A notice of demotion must be given to the employee which describes the deficiency or infraction involved, and which states the likely consequences of further unsatisfactory performance and/or conduct. The demotion shall be permanently noted in the employee's official personnel file, but the employee shall not be disqualified from consideration for later advancement.

An employee may also be dismissed from the City employment in the interest of good discipline. A notice of dismissal must be given to the employee, which describes the deficiency or infraction involved.

## §7-07.  VOLUNTARY GRIEVANCE PROCEDURE

A grievance is defined as a complaint about a condition of the work place, which the supervisor has the authority to correct. An employee may submit a grievance in writing, to his/her immediate supervisor within fifteen (15) days after the cause of the grievance arises or becomes known to the employee. If the grievance is ignored, or not satisfactorily resolved by the supervisor within ten (10) days of the time the grievance was submitted, the employee may present the grievance to the next higher supervisory level, and so on. If the subject matter of the grievance pertains to actions or omissions of the employee's immediate supervisor, the employee may present the cause of the grievance directly to the next higher supervisory level. The City Council constitutes the highest level of appeal for grievance purposes.

It is the responsibility of the immediate supervisor to evaluate a grievance, and, if he/she cannot resolve the situation directly, to submit the grievance with comments and recommendations, to the next higher level and so on. However, supervisors shall answer in writing or dispose of employee grievances as expeditiously as possible, conducting any investigations if necessary. Both supervisor and employee should make every effort to resolve grievances at the lowest level possible. Employees should be kept informed of the status of their grievances. Punitive action shall not be taken against any employee for submitting a grievance in good faith.

Nothing herein shall alter the at-will status of City employees.

# CHAPTER 8

## NONDISCIPLINARY TERMINATION

### § 8-01.  RESIGNATION

An employee may leave the employment with the City in "good standing" by giving two (2) weeks notice.  The City Administrator may waive any portion of the notice period.  The personnel records of any employee who resigned by giving proper notice, shall show that the employee resigned of his/her own accord.

### § 8-02.  LAYOFF

An employee may be laid off because of changes in duties, organizational changes, lack of work, or budget cutbacks. Whenever possible, an employee laid off from one City department, shall be transferred to a suitable position elsewhere, provided said employee has the appropriate qualifications and job skills.  Whenever possible, at least two (2) weeks notice shall be given to an employee prior to layoff.  Layoffs shall be carried out on the basis of demonstrated job performance and efficiency, with the most proficient employees being retained the longest.  Seniority within City service shall be used to determine the order of layoff among employees with substantially equivalent records of job performance and efficiency, with the most senior employees being retained the longest.  Temporary employees shall be laid off before regular employees performing similar duties.  A layoff shall not be considered a disciplinary action.

Employees laid off, may be recalled back to their job or another similar job, for which they meet the minimum job requirements, and qualifications, in the reverse order of the layoff.  Employees being recalled, shall have precedence over other job applicants.  Employees recalled back to work shall report to work as instructed.   An employee failing to report back to work shall be considered as having forfeited his/her right to reemployment.

### § 8-03.  ADMINISTRATIVE TERMINATION

Any employee who does not return to work after the expiration of authorized leave without pay, will be administratively terminated.

### § 8-04.  RETIREMENT

Eligible employees may elect to retire from the City service in accordance with applicable retirement programs, if any.

# CHAPTER 9

## PERSONNEL RECORDS

### § 9-01.  PERSONNEL FILES AND RECORDS

The Personnel Department shall maintain the official personnel files and records for all City employees.  Unless otherwise provided by law, personnel files shall be confidential, and may not be used or divulged for purposes unconnected with the City personnel management, except with the permission of the employee(s) involved.  Nothing herein shall prevent the dissemination of impersonal statistical information.  An employee shall have a right of reasonable inspection of his/her official personnel files and records under appropriate supervision.

### § 9-02.  CHANGE OF PERSONNEL STATUS OR NEW HIRING

Department heads shall submit in writing to the City Administrator recommended changes in the personnel status of their employees or requests to hire new employees prior to making any commitments to either existing employees or prospective new hires.

### § 9-03.  PERSONNEL REPORTS

Department heads shall be responsible for providing the Personnel Department with all necessary employee reports and records associated with good personnel management for their department.  Such records and reports shall include, but not be limited to, employee sick leave, vacation leave, attendance and overtime records, performance reports, counseling records, and all types of disciplinary action.  Failure to do so may result in formal disciplinary action.

The Personnel Department or Department Heads shall prepare such narrative reports, statistical summaries, and other personnel reports as are necessary, or desirable, to provide useful information to the City Administrator and City Council.

# CHAPTER 10

## EMPLOYEE BENEFITS

### § 10-01.   MEDICAL/DENTAL BENEFITS

During their employment on a full time basis, all full time employees are provided with medical and dental insurance. Coverage shall begin immediately upon acceptance of the employee by the insurance underwriter.  This insurance provides for payment of hospitalization and major medical expenses up to the limits of the policy, for illness and accidental injuries off the job.  Coverage for other family members is available at the option of, and payable by, the employee through payroll deductions at the prevailing rates.

According to the Consolidated Omnibus Reconciliation Act of 1985 (COBRA), certain individuals are allowed the option of continuing their group health insurance under specified conditions.  Any employee receiving a reduction in hours worked or terminated by the City, except in cases of gross misconduct, will be allowed to continue the insurance coverage up to a maximum of eighteen (18) months.  Upon the occurrence of certain events, coverage for family members may be continued for up to thirty-six (36) months.  Continuation of group health insurance will be discussed with the separating employee during the employee's separation briefing described in section § 7-05.  Employees or family members that elect to continue coverage after being laid off or terminated, will be required to pay the entire cost of the premiums.

### § 10-02.   WORKERS' COMPENSATION INSURANCE

Any City employee injured as a result of duties performed in the course of his/her job, shall be eligible to receive workers' compensation benefits from the City's insurance carrier, at no expense to the employee.  Workers' compensation benefits are intended to compensate workers with job related injuries or illnesses, by reimbursing them for income losses, and paying for medical and rehabilitation treatment.  All injuries must be reported to the department head immediately, and the department head is responsible to notify the City Secretary.

### § 10-03.   SOCIAL SECURITY

All employees of the City are covered under the Federal Insurance Contributions Act (FICA).  This type of government insurance, known as the "Federal Old Age, Survivors, and Disability Insurance" provides for benefits for retirement, disability, or upon death.  This insurance is financed by social security taxes which are paid through payroll deductions by the employee.  The City contributes a matching amount on behalf of the employee.

### § 10-04.   UNEMPLOYMENT INSURANCE

All employees of the City are covered under the Texas Unemployment Compensation Insurance Program and the Federal Unemployment Tax Act (FUTA).  This program provides payments for unemployed workers in certain circumstances as provided by law.

# CHAPTER 11

## TRAVEL POLICY

### § 11-01.  APPLICABILITY OF TRAVEL POLICY

This policy is applicable to all City employees and applies to all travel on City business outside the City limits, subject to budget limitations and authenticated expenses.

### § 11-02.  AUTHORIZATION REQUIRED

The City Administrator may authorize travel leave and expenses for City business outside the City.  All travel requests must be approved by the department head and City Administrator prior to its occurrence.  Any employee traveling on official City business, shall leave word with their supervisor as to where they can be reached while out of the City.  All travel requests must be submitted on forms provided for that purpose, as required by the City Administrator.

### § 11-03.  TRANSPORTATION EXPENSES

Normally, when travel is required for City business, a City or personal vehicle may be used when such travel distances are within a fifty (50) mile radius.  For travel beyond two hundred fifty (250) mile radius of the City, air transportation or the use of a City, or personal, vehicle may be authorized by the City Administrator.

All approved transportation expenses will be reimbursed as follows:

    (a)  When employees use their personal vehicles, all travel mileage shall be paid at the rate of 29¢ per mile plus any parking fees.  A mileage report, and receipts for parking fees, shall be required.

    (b)  When City vehicles are used, all expenses incidental to the use of such vehicle (parking, gasoline, oil, repairs, etc.) shall be reimbursed.  Receipts shall be required.

    (c)  When air travel is permitted, the cost of such airfare shall be reimbursed or paid by the City in advance.  Additionally, reimbursement will be made for the use of rental cars, taxi or bus fares, provided such expenses are necessary and reasonable.  Receipts shall be required.

Alternate routes which are desirable because of personal affairs of the traveler can be used, but only on the traveler's time, and with the traveler bearing the additional cost of the alternate route.  Mileage and related expenses incurred on alternate routes must be reflected in the mileage report.

### § 11-04.  FOOD AND LODGING

Whenever authorized by the City Council or City Administrator, food and lodging expenses associated with official City business travel, shall be paid on a *per diem* basis when overnight stay is required.  The rate shall be paid in advance and not to exceed forty dollars ($40.00) per day.  Lodging will be reimbursed at single rates, unless two or more employees occupy a single room, or otherwise approved by the City Administrator.  It shall be the policy of the City to reimburse for only lodging that is economical and practical.  Exceptions to this may be granted when cheaper hotel rooms are unavailable, or where conferences are held in, or nearby the hotel.

Whenever authorized by the City Administrator, food expenses associated with official City business, or continuing education not requiring overnight stay may be paid in advance and will not exceed ten dollars ($10.00) per meal.  In addition, eligibility for said *per diem* when overnight stay is not required, is conditional in that the employee must have successfully completed the required probationary period as prescribed in Section § 3.01.

-31-

Reimbursement will not be made for personal telephone calls, alcoholic beverages, entertainment expenses, or other sundry items not relevant to the public purpose of the travel, except as provided in Section § 11.05. hereafter.

## § 11-05.   ENTERTAINMENT

The City Council realizes that from time to time, it is necessary to entertain dignitaries, and state, federal, and business representatives, whenever it may be deemed in the best interest of the City.  Such expenses may be reimbursed at the discretion of the City Administrator.  Receipts will be required before reimbursement can be made.  Whenever practical, prior authorization should be obtained from the City Administrator.

## § 11-06.   TRAVEL ADVANCES AND REPORTS

Minimum, but sufficient cash advances may be drawn from the City treasury by employees traveling on City business. All unused, unauthorized, or unapproved travel advances, shall be returned immediately upon return of the business trip.  An expenditure report shall be filed with the finance department within two (2) working days following the trip. Failure to submit an expense report will subject the employee to a payroll deduction for any funds to advanced.  All cash advance and expenditure reports, shall be submitted on forms provided for the purposes as required by the City Administrator.

# CHAPTER 12

## VEHICLE POLICY

### § 12-01.  PURPOSE OF VEHICLE POLICY

The purpose of this vehicle policy is to provide for the safe and effective utilization of the City vehicle fleet through rules, regulations, and procedures.

### § 12-02.  APPLICABILITY

These policies shall apply to all City owned vehicles and all persons assigned a vehicle, inclusive of operators and passengers.

### § 12-03.  USE OF CITY VEHICLES

All City equipment and vehicles are intended for official City business use only.  The City Administrator may extend said use, according to need and circumstance, to another public agency, or for uses beneficial to the general public. Use of City equipment and vehicles is limited to the Hidalgo, Willacy, and Cameron County area unless otherwise approved by the City Administrator.

### § 12-04.  OPERATION AND RIDERSHIP

Except for maintenance, service and repair, only City officials and employees are allowed to operate City vehicles. Ridership should be limited to employees or persons on official City business.  Due to the nature of certain employees being required to be on call and take a vehicle home, the City Administrator may exercise limited discretion in situations wherein the ridership policy might cause transportation difficulties to an employee required to be on standby and use a City vehicle.

Employees allowed to operate City vehicles between their places of residence and work shall be required to reside within a fifteen (15) minute drive to the City.

### § 12-05.  SAFETY, MAINTENANCE AND CARE

Personnel assigned the use of a vehicle, or piece of equipment, will be responsible for the maintenance and care of said vehicle/equipment.  Damage arising from misuse or neglect attributable to operator negligence is subject to review by the City Administrator, and subsequent repair at the expense of employee held responsible of same.

No one shall operate a City vehicle or piece of equipment that is unsafe; the operator will be responsible for exercising good judgment and performing a cursory inspection prior to operating said vehicle or equipment.  All operator and passengers will be individually accountable for abiding with all laws pertaining to vehicles and their operation.   No one is allowed to operate a City vehicle or piece of equipment while under the influence of alcohol, medication or drugs, that may alter judgment or reflex.  No person with corrective devices or appliances shall be allowed to operate City equipment or vehicles without said corrective devices or appliances being in place and in good repair.

### § 12-06.  VEHICLE LOG

It will be the responsibility of each operator of a City vehicle or piece of equipment, to properly fill out any paperwork associated with the use, mileage, gas/lubricant applications, or any other documentation, which may be required from time to time.

-33-

CSAPDF - www.fania.com

# CHAPTER 13

## DRUG AND ALCOHOL POLICY

### § 13-01. STATEMENT OF PURPOSE AND SCOPE

The City of Los Fresnos recognizes that alcohol and drug abuse in the work place, has become a major concern. We believe that by reducing drug and alcohol abuse, we will improve the safety, health, and productivity of employees. The objects of our drug abuse policy are to provide a safe and healthy work place for all employees, prevent accidents, and comply with Section 411.091 of the Texas Labor Code.

### § 13-02. STATEMENT OF POLICY

The use, possession, sale, transfer, purchase, or being under the influence of drugs or alcohol, while on the City of Los Fresnos property, or using company equipment, is prohibited. Employees may not report to work, with, under the influence of, or use of prescription drugs, if such drugs might affect the ability of an average person to operate or work around equipment, unless the employee has obtained the management's consent.

### § 13-03. DEFINITION OF DRUG

(a) For the purposes of this section, the term "drug" whenever it appears, includes illegal drugs, alcoholic beverages, illegal inhalants, other intoxicants, and prescription drugs, if the prescription drugs might affect the ability of an average person to work, unless the employee has informed the office coordinator or his immediate supervisor.

(b) While the City of Los Fresnos does not sponsor or endorse any specific drug treatment programs, such programs are available through public and private health care facilities in our area. Affected employees are encouraged to seek assistance for themselves and their dependents. The group health insurance offered to employees and their dependents, provides limited coverage for expenses related to drug treatment programs. See the office coordinator or refer to the plan description for details.

(c) The City of Los Fresnos does not offer, nor require participation in, drug and alcohol abuse education and training programs. However, various public and private facilities in our area offer such programs, and affected employees are encouraged to seek assistance.

(d) The City of Los Fresnos requires drug testing as a condition for employment.

### § 13-04. CONSEQUENCES OF VIOLATING THE DRUG AND ABUSE POLICY

Any employee violating this drug abuse policy, will be subject to disciplinary action and possible termination.

### § 13-05. POSSESSION AND USE OF AND SEARCH FOR ILLEGAL AND UNAUTHORIZED ITEMS

No employee of the City of Los Fresnos, or any employee of any contractor, sales company, or vendor, shall possess or bring onto City property any illegal drugs, firearms, or other weapons. This prohibition against firearms applies notwithstanding Texas legislation allowing a resident to carry a concealed handgun. Any City employee who is found in possession of any such illegal or unauthorized items, or who brings such items onto City property, will be subject to disciplinary action. Any employee or representative of a contractor, sales company, or vendor, who is found in possession of any such illegal or unauthorized items, or who brings any such items onto City property, will not be permitted future entry, and is subject to criminal prosecution.

-34-

CSirPDF - www.ferica.com