IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

**MAR 2 9** 2001

**Michael N. Milby**
**Clerk of Court**

| | | |
|---|---|---|
| RICARDO PEREZ, JR. | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-00-161 |
| | § | |
| CITY OF LOS FRESNOS, TEXAS, | § | JURY DEMANDED |
| JUAN C. SIERRA, SR., GONZALO ACEVEDO, | § | |
| IDA GARCIA, MIGUEL MENDOZA, | § | |
| INDIVIDUALLY AND IN THEIR OFFICIAL | § | |
| CAPACITIES, AND JUAN MENDOZA, JR., | § | |
| Defendants. | § | |

## PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, RICARDO PEREZ, JR., hereinafter referred to as Plaintiff, complaining

of the CITY OF LOS FRESNOS, JUAN C. SIERRA, SR., GONZALO ACEVEDO, IDA GARCIA,

MIGUEL MENDOZA, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES, AND JUAN

MENDOZA, JR., hereinafter called by name or collectively as Defendants, and for such cause of

action, would respectfully show unto the Court as follows:

1. **PARTIES**

    1.1  Plaintiff, RICARDO PEREZ, JR., is an individual residing in Hidalgo County, Texas.

    1.2  Defendant, CITY OF LOS FRESNOS, TEXAS, is a political subdivision organized

pursuant to the Constitution and laws of the State of Texas. The Defendant City is a municipality

chartered by the State of Texas, has been served and answered and filed its motion to dismiss. No

additional service is necessary.

    1.3  Defendant JUAN C. SIERRA, SR. is an individual residing in Cameron County, Texas

and   has been served and answered and filed its motion to dismiss.  No additional service is

CutePDF · www.fenito.com

necessary.

1.4  Defendant GONZALO ACEVEDO is an individual residing in Cameron County, Texas, and  has been served and answered and filed its motion to dismiss.  No additional service is necessary.

1.5  Defendant MIGUEL MENDOZA is an individual residing in Cameron County, Texas, and  has been served and answered and filed its motion to dismiss.  No additional service is necessary.

1.6  Defendant IDA GARCIA is an individual residing in Cameron County, Texas, and  has been served and answered and filed its motion to dismiss.  No additional service is necessary.

1.7  Defendant JUAN MENDOZA, JR., is an individual residing in Cameron County, Texas who has been served and filed his Original Answer.

## 2.    JURISDICTION

2.1  Jurisdiction is proper against Defendants CITY OF LOS FRESNOS, IDA GARCIA, MIGUEL MENDOZA, JUAN C. SIERRA, SR. and GONZALO ACEVEDO pursuant to 28 U.S.C. §1331 and §1343.

2.2  Jurisdiction is proper as to Defendant JUAN MENDOZA, JR. pursuant to 28 U.S.C. §1343(a)(1),(2) and §1367.  Defendant JUAN MENDOZA conspired with other Defendants and persons to deprive the Plaintiff of his constitutional rights and privileges and the remaining claims against him are so related to the federal claims that they form part of the same case or controversy.

## 3.    FACTUAL ALLEGATIONS

3.1  On or about March, 2000, RICARDO PEREZ, JR. was hired as the new Chief of Police for the CITY OF LOS FRESNOS, TEXAS, a Type A Municipality.  Plaintiff was chosen as the Chief of Police after competitive application with several other law enforcement officers.  He began

work on March 15, 2000 as Chief of Police for the CITY OF LOS FRESNOS.

3.2   Defendants IDA GARCIA, MIGUEL MENDOZA, GONZALO ACEVEDO and JUAN C. SIERRA, SR. are alderpersons for Defendant CITY OF LOS FRESNOS.   At all times relevant hereto they acted during the course and scope of their duties as the policy making officials and representatives for the CITY OF LOS FRESNOS.

3.3   Defendant JUAN MENDOZA, JR. was a constable for Cameron County who resides in Los Fresnos, Texas.  His district encompassed the area of Los Fresnos, Texas.  He is the brother of Alderman MENDOZA and the cousin of Alderwoman GARCIA.  He and his associates were also instrumental in getting Aldermen ACEVEDO and SIERRA elected, two of the other Defendants.

3.4   Shortly after assuming office, the Plaintiff discovered past complaints of abuse and civil rights violations by a Los Fresnos police officer named David Rodriguez.  On or about June 15, 2000, the City Attorney along with Plaintiff's immediate supervisor, Pam Denny, recommended that the Plaintiff refer the complaints and allegations against Officer Rodriguez to the Federal Bureau of Investigation.  These complaints were made prior to the administration of the Plaintiff and were renewed after another incident occurred involving the complainant and Officer Rodriguez during Plaintiff's administration.

3.5   Officer Rodriguez is a police officer for the CITY OF LOS FRESNOS with close ties to Alderwoman GARCIA, Alderman MENDOZA and JUAN MENDOZA, JR.  Officer Rodriguez would spend hours at Constable MENDOZA's office during his work shift and had to be ordered by the Plaintiff not to spend so much time there in dereliction of his duties.

3.6   Officer Rodriguez was also given a directive by the Plaintiff to get approval prior to allowing civilian passengers in his police vehicle while on duty.  This was because Defendant IDA GARCIA would sometimes ride along with Officer Rodriguez in his patrol car, often during his

evening shift.  On at least one occasion, Officer Rodriguez and IDA GARCIA were seen meeting

behind the dumpster of a local business after midnight while Officer Rodriguez was on duty.  No

response to any complaint was noted by Officer Rodriguez and no complaints were documented on

behalf of IDA GARCIA.  On duty and off duty, daily, Officer David Rodriguez often spent hours

with Defendants JUAN MENDOZA, JR.  and IDA GARCIA.  They even attended  parties  and

social functions together.  They are closely associated.

      3.7   Shortly after Plaintiff's report of Officer Rodriguez  to the F.B.I., Defendant GARCIA

began making inquiries into Plaintiff's work history and performance.

      3.8   On or about August 10, 2000, Defendant JUAN MENDOZA, JR. and his associates

began a series of professional and personal complaints about Plaintiff.  In an open letter to the City

Council, Defendant JUAN MENDOZA, JR. accused Plaintiff of being unprofessional in his style

of police administration and expressed "no confidence whatsoever in the leadership, professional and

administrative abilities of this Chief," the Plaintiff.  This letter was circulated among the Los Fresnos

City Hall by the Defendant Alderpersons.   Defendant JUAN MENDOZA, JR. also complained of

the Plaintiff to the co-Defendants.

      3.9   On or about August 14, 2000, the four Defendant City Alderpersons all signed a request

to have a special meeting held to consider terminating the Plaintiff for among other things, "lack of

confidence" under the Texas Local Government Code 22.007(b).

      3.10   This meeting was set for August 29, 2000 with the only Agenda item for consideration

as follows:

> In executive session: To deliberate the employment, evaluation,
> reassignment, duties, discipline, or dismissal of the Chief of Police.
>
> In open session: Consider and possibly take action concerning the
> continued employment of the Chief of Police.

3.11    Prior to the August 29, 2000 special meeting, Plaintiff requested that he be provided the reasons for his potential disciplining or termination. No response was provided.

3.12    Prior the August 29th meeting, Alderman SIERRA stated in the local newspapers: "Personally, I don't have a problem with him, but we have some issues that we're concerned with." Defendant ACEVEDO stated publicly: "He has been doing a good job .... I want to know what is wrong."

3.13    Prior to the August 29th meeting, Defendant JUAN MENDOZA, JR. was heard to say to some Los Fresnos citizens that he would have the Plaintiff terminated and install his own person as the Chief of Police for the City of Los Fresnos. On at least one occasion, while out on night patrol, the Plaintiff was followed by Defendant JUAN MENDOZA, JR. and by Defendant GARCIA. Plaintiff was also surveilled while in town and off duty by associates of Defendants JUAN MENDOZA, JR. and GARCIA.

3.14    On or about August 28, 2000, the Plaintiff received an outstanding appraisal rating as the Chief of Police of the CITY OF LOS FRESNOS from his supervisor, the City Administrator. The Plaintiff received this evaluation upon completing his probationary period pursuant to Section 3.01 of the City Personnel Policy Manual.

3.15    At the August 29th special meeting, an associate of Defendant JUAN MENDOZA, JR., his deputy constable Ramiro Sanchez, publicly accused the Plaintiff, in front of the vast audience and media present, that the Plaintiff had caused some alleged drug dealers to go free and questioned the professional ability and integrity of the Plaintiff. These drugs were in the custody of the Los Fresnos Police Department and this associate inferred that the drugs had been tampered with possibly by the Plaintiff. Before Plaintiff was given an opportunity to respond, the four Defendant Alderpersons who petitioned for the special meeting moved to end the meeting and

reconvene on September 26, 2000. Plaintiff denies that he tampered with the alleged drugs or that he has any knowledge concerning that allegation. Only Officer David Rodriguez, the Border Patrol agents present and the Constable handled the alleged drugs before they were retested the following morning by the Cameron County Drug Task Force, which tested negative.

3.16  The employment issues concerning the Plaintiff as Chief of Police of the CITY OF LOS FRESNOS drew wide media attention prior to and on August 29th. There were dozens of citizens, former alderpersons, and mayors who attended to show support for the community programs and professionalism the Plaintiff had brought to the police department in such a short time. The audience also demanded to be told the reasons for the potential termination of the Plaintiff. However, the Defendant Alderpersons refused to comment and terminated the meeting without providing the Plaintiff any reason for his discipline or termination consideration.

3.17  After the special meeting, the Plaintiff commented to the media and fellow citizens that the council faction seeking his termination had yet to provide any notice of reasons for his proposed termination and that he had demanded to be provided this notice. The Plaintiff and citizens present reiterated that the Plaintiff had done a good job and met all expectations. The Plaintiff, as well as several citizens, stated that such secrecy was counter to democratic principles and attacked the Defendant Alderpersons attempting to terminate the Plaintiff. The media was also quite critical of the Defendants for their secrecy and obvious backdoor dealings concerning the Plaintiff.

3.18  The Defendant council members were humiliated and angered by the attention provided by the citizens and media. One Defendant Alderperson threatened a physical fight with one of the complaining citizens attending the meeting who challenged that Alderperson to provide reasons for the termination. Defendant Alderwoman Garcia was seen in tears at the end of the

August 29th meeting.

3.19   The following day, on August 30, 2000, Defendant MIGUEL MENDOZA and the Mayor met with the Plaintiff at work, away from media attention and public scrutiny, and instructed the Plaintiff not to take any action against any officer, but particularly Officer Rodriguez.

3.20   Prior to the September 26, 2000 meeting, Plaintiff again requested that he be provided notice of the complaints against him regarding his potential termination. The request was made pursuant to City policies which applied to the Plaintiff as an employee of the City, "a notice of suspension must be given to the employee and must describe the deficiency or infraction involved, the corrective action offered to the employee and the likely consequence of further unsatisfactory performance and/or conduct." City Personnel Manual Section 7.05. No reasons were ever given to the Plaintiff.

3.21   At the September 26, 2000, meeting, both Mayor Manuel Abrego and Alderperson Melanie McCormick stated on open record that they knew of no reason to terminate the Plaintiff and that the four Defendant Alderpersons who wished to terminate the Plaintiff had not provided any concerns or reasons for his termination. During the meeting of September 26th, the Plaintiff and a good number of citizens of the CITY OF LOS FRESNOS demanded that the council provide reasons for the proposed termination. Fellow Alderwoman Melanie McCormick stated that the Defendant Alderpersons had not disclosed to her the reasons they sought the Plaintiff's termination. Alderwoman McCormick stated this was the first time in her tenure as an elected official for Defendant City that such action had been requested by a City Council with no reason or notice provided to their fellow alderpersons or the affected employee. Without comment or explanation, the four Defendant Alderpersons voted to terminate the Plaintiff as Chief of Police of the CITY OF LOS FRESNOS. At this meeting, Mayor Abrego reminded the four Alderpersons that they had

C:\MyFiles\TRJ--GENERAL FILES\WRONGFUL-TERMINATION CASES\perez.ricardo\Pleadings\Pltf's First Amended Original Complaint.wpd          7

several letters from the City attorneys that their actions to terminate the Plaintiff would clearly violate the law and bring liability on the City. Besides the City Attorney, the individual Defendants sought the advice of non-municipal persons for ways to have the Plaintiff terminated prior to his termination.

3.22   On or about September 25, 2000, Plaintiff, as Chief of Police, recommended the termination of Officer David Rodriguez for cause.

3.23   The same four Defendant Alderpersons who voted to dismiss the Plaintiff, voted to reinstate and restore Officer Rodriguez on October 10, 2000. Officer Rodriguez was given notice of the hearing as well as the allegations against him. Officer Rodriguez was allowed to bring witnesses and present evidence at his hearing prior to his reinstatement, all the procedures comported with a meaningful due process hearing.

3.24   Shortly after Plaintiff's termination, Defendant SIERRA told the media, including the local newspapers, that he would release information concerning the corruption of the Plaintiff's administration at the police department. To date nothing has been provided, and Plaintiff strictly denies any corruption within his department that he was involved in or was aware of.

3.25   Plaintiff was invited to discuss the City Council's "concerns" with the Plaintiff on or about December 19, 2000, two and one half months after his termination. Plaintiff then made written and verbal requests to determine if this "discussion" was to be considered a due process hearing so that Plaintiff could bring witnesses and present evidence on his behalf, i.e., have a meaningful due process hearing. Plaintiff was told by the City Attorney prior to the meeting that this was not a due process hearing and at the meeting, the City and its attorneys refused to admit whether or not this "discussion" was meant to be a due process hearing. Failing to have a meaningful hearing, the Plaintiff went home but picked up the local newspaper wherein he was

shocked to read Mayor Abrego quoted as stating that the meeting was a "due process hearing."

3.26   Section 7-01 states "All reasonable efforts will be made to insure due process to the employee."

3.27   The four Defendant Alderpersons had  a meeting of  the minds to terminate the Plaintiff although they never had any public or executive discussion concerning the termination. This was done despite the Plaintiff invoking the procedures of  the City Personnel Policy Manual requiring explanations or reasons concerning the consideration for his termination.  The Defendant Alderpersons discussed as a group official City business without proper  notice and outside the public domain in violation of Texas Open Meeting Act requirements.

3.28   Defendants, in a flagrant abuse of power and disregard for the public trust, put their own personal interest and loyalties ahead of and in violation of the Plaintiff's rights.

3.29   The four Defendant Alderpersons constitute a majority of the City Council and can be fairly said to be the policy-making body for the Defendant CITY OF LOS FRESNOS.

3.30   The individual Defendants intended to deprive the Plaintiff of his rights, and acted with ill will and bad faith in terminating the Plaintiff.

4.      **SECTION 1983 AND 1985 CIVIL RIGHTS VIOLATIONS**

Plaintiff incorporates the above fact paragraphs herein for all purposes.

4.1     **FREE SPEECH RETALIATION**

The conduct of Defendants CITY OF LOS FRESNOS, JUAN C. SIERRA, JR., GONZALO ACEVEDO, IDA GARCIA, MIGUEL MENDOZA, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES, and JUAN MENDOZA, JR. complained of, constituted discrimination on the basis of Plaintiff's speech and is protected by the First Amendment.  Plaintiff made comments regarding a matter of public concern and reported civil rights violations by one of his officers to federal law

enforcement authorities. The Plaintiff further made critical comments about the secrecy and failure of the Defendants to follow personnel policies which also involved matters of public concern. As a result, Plaintiff was fired for exercising his First Amendment rights and this was the motivating factor.

**4.2**   **FAILURE TO PROVIDE DUE PROCESS**

The Plaintiff also had a protected due process property interest in his continued employment and was never given any meaningful due process before or after his termination. In taking the aforesaid actions, the Defendants, acting under color of statute, regulation, custom, usage of the laws of the State of Texas, within the meaning of 42 U.S.C. § 1983 and § 1985, violated the Plaintiff's rights guaranteed under the Constitution.

**4.3**   **VIOLATION OF PROTECTED LIBERTY INTEREST**

Defendant JUAN MENDOZA, JR., in collusion and conspiracy with the other Defendant Alderpersons, denied the Plaintiff due process for his protected liberty interest. Comments were made publicly casting shadows over the reputation of the Plaintiff as well as inferring acts of dishonesty and incompetency on him. The Plaintiff was never provided a forum to clear his name. Defendant ACEVEDO publicly made allegations of corruption relating to the Plaintiff. Plaintiff was denied his liberty interest in his reputation.

**4.4**   **CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS**

Plaintiff alleges that the officials who participated in the wrongful acts were lawmakers or policy makers with the CITY OF LOS FRESNOS whose actions may fairly be said to be the actions of the City. Defendant JUAN MENDOZA, JR. and his associates, using the authority and weight of their office, abused their public trust to cast aspersions and defame Plaintiff and deny him of his protected liberty interest. All of the Defendants acted in collusion and conspired to deprive the

Plaintiff of his constitutionally protected rights, and in violation of 42 U.S.C. §1983 and §1985. The Defendants intended to violate the Plaintiff's constitutional rights for exercising his free speech, depriving him of his property interests without due process and his liberty interest in his reputation.

**5.      STATE LAW CLAIMS**

Plaintiff incorporates the above facts herein for all purposes.

**5.1     TEXAS WHISTLEBLOWER**

Pursuant to the Texas Government Code Section 554.001 et. seq., the Plaintiff did in good faith report a violation of law against Officer David Rodriguez to an appropriate law enforcement authority.   Shortly thereafter, the Defendants began to take adverse personnel action against the Plaintiff.   Plaintiff has complied, or is in the process of complying with all conditions precedent including the voluntary grievance procedures, but no relief has been availed.   Further, Plaintiff expects that no relief will be availed since the grievance procedure is to the City Council which dismissed him.   Defendant CITY OF LOS FRESNOS and the individual Defendants are guilty of retaliating against the Plaintiff and are liable for all damages incurred by the Plaintiff.

**5.2     DEFAMATION OF CHARACTER**

Plaintiff  sues the individual Defendants for defamation of his good reputation due to the publication of false and non-privileged statements by the individual Defendants to third persons. The statements were all made in reference to Plaintiff's work performance, his professional integrity and other matters concerning his occupation and  related to acts  which accuse the Plaintiff of the commission  of  crimes  and/or  immoral  and   dishonest  conduct.   The  defamatory  statements eventually were published in the local media and have referenced the Plaintiff or his position and were so closely associated with the Plaintiff as to constitute allegations against the Plaintiff himself. Because of this fact, it is clear that the publication was made of, and concerning the Plaintiff, and

was so understood by those persons who read the articles or heard the statements.

The defamatory statements made the subject of this lawsuit were uttered with malice and bad faith for the purpose of causing injury to the Plaintiff. In this connection, Plaintiff will show that the individual Defendants harbored feelings of ill will towards him. Defendants' publication of slander and slander per se were made with malice for the reason that it was made with knowledge that it was false or with such utter recklessness as to indicate a disregard to the consequences and conscious indifference to the rights of the Plaintiff.

**5.3    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

The Plaintiff further asserts that the individual Defendants' actions in the nature and extreme and outrageous conduct were intentional and reckless whose purpose was to cause infliction of severe emotional distress to the Plaintiff. Said actions and statements were extreme and outrageous and shocked the conscience of reasonable and prudent persons. Defendants' actions caused Plaintiff mental as well as physical pain. As a result of Defendants' actions, Plaintiff has suffered damages in amounts which exceed the minimum jurisdictional requirements of the Court.

**5.4    CIVIL CONSPIRACY**

The individual Defendants, in order to promote their own personal interests, agreed to circumvent the requirements of Texas law for public officials concerning open meetings, and discussion of matters which concern municipal business. The individual Defendants violated State law in order to further violate the Plaintiff's own property rights and interests, and in violation of his rights. As such, the individual Defendants are liable to the Plaintiff for all damages available at law.

**6.    CONDITIONS PRECEDENT**

All conditions precedent have occurred or are occurring.

## 7.    **ACTUAL DAMAGES**

As a result of the incidents described above, that are made part of the basis of this suit and incorporated herein, Plaintiff has incurred damages in the following respects:

### 7.1    **Injury to Reputation and Character**

As a result of the dissemination of false information and the attendant publicity caused by the Defendants, Plaintiff is and will in the future be seriously injured in good name and reputation in the community and exposed to hatred, contempt, and ridicule of the general public, as well as potential employers, friends and relatives. Plaintiff's position was one of high public trust and he has suffered damages in amounts which exceed the minimum jurisdictional requirements of this Court.

### 7.2    **Lost Earnings and Diminished Earning Capacity**

At the time of the incident complained of, Plaintiff was gainfully employed as a Chief of Police with the CITY OF LOS FRESNOS. As a proximate result of the wrongful acts of the Defendants, Plaintiff was unable to attend to his occupation and thereby suffered a loss of wages in the past, fringe benefits and other valuable job rights for which he hereby sues. As a result of the wrongful acts of the Defendants, Plaintiff's capacity to earn a livelihood has been severely impaired, and in all reasonable probability this injury will continue long into the future, if not for the balance of Plaintiff's natural life, all to his damage for which he hereby sues.

### 7.3    **Past and Future Medical Expenses**

As a result of the injuries inflicted upon the Plaintiff by the Defendants, Plaintiff was caused to incur medical bills in the past and in all reasonable probability will be likely to incur other medical bills related to the injuries. Plaintiff has suffered damages in amounts which exceed the minimum jurisdictional requirements of this Court.

### 7.4     **Past and Future Mental Anguish**

As a result of the injuries sustained by the Plaintiff and inflicted by the Defendants, Plaintiff has suffered severe emotional distress, headaches, embarrassment, anxiety, sleeplessness, worry, nervousness and other physical as well as mental pain and anguish and in all reasonable probability, Plaintiff will continue to suffer such mental and physical pain and anguish for a long time into the future, if not for the balance of his natural life. Plaintiff has suffered damages in an amount which exceed the minimum jurisdictional requirements of this Court.

### 8.     **EXEMPLARY DAMAGES**

The conduct of the individual Defendants was carried out willfully, maliciously, with ill will, and constituted such an entire want of care as to constitute a conscious indifference to the rights or welfare of this Plaintiff. Plaintiff is hereby entitled to recover exemplary damages to deter such cruel and undignified procedures by the individual Defendants in the future. Prior to terminating the Plaintiff, the individual Defendants were advised by counsel that their actions were illegal and the individual Defendants also sought the advise of other persons on ways to remove the Plaintiff. Accordingly, Plaintiff requests that exemplary damages be awarded against the individual Defendants in amounts which exceed the minimum jurisdictional requirements of this Court.

### 9.     **ATTORNEYS' FEES AND LITIGATION EXPENSES**

By reason of the allegations of this petition, Plaintiff is entitled to recover reasonable attorney's fees and expert fees in a sum that is reasonable and necessary. In this connection, Plaintiff will show that the attorneys whose names are subscribed to this pleading have been employed to assist Plaintiff in the prosecution of this action. A reasonable attorney's fee is requested for the work expended in preparation and trial of this cause along with a reasonable fee for any and all appeals to other courts. Reasonable and necessary attorney's fees are sought pursuant to 42 U.S.C.

## CERTIFICATE OF SERVICE

I hereby certify that on the _28th_ day of March, 2001, a true and correct copy of the foregoing document was served on all counsel of record via certified mail, return receipt requested, as follows:

**VIA CMRRR #Z 246 475 382**
Honorable J. Arnold Aguilar
**LAW OFFICE OF J. ARNOLD AGUILAR**
Artemis Square, Suite H-2
1200 Central Blvd.
Brownsville, Texas 78520

**VIA CMRRR #Z 246 475 380**
Honorable Albert Villegas
**VILLEGAS LAW FIRM**
1324 E. Seventh Street
Brownsville, Texas 78520

_____
Ted Rodriguez, Jr.